STATE of Minnesota, Respondent,

v.

Michael William SAHR, Appellant.

No. A10–0074.

Supreme Court of Minnesota.

April 25, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Tom J. Harbinson, Carl O. Tvedten, Assistant County Attorneys, St. Cloud, MN, for respondent.

John M. Stuart, State Public Defender, Mark D. Nyvold, Special Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

PAGE, Justice.

In May 2008, respondent State of Minnesota charged then 29–year–old appellant Michael William Sahr with first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a) (2010) (prohibiting a defendant from engaging in "sexual contact with a person under 13 years of age" [1] when the defendant is more than 36 months older than the person), arising out of conduct involving his then 8–year–old niece. The complaint alleged that Sahr had sexually assaulted his niece by touching and rubbing her bare vaginal area. After the jury was impaneled and sworn, defense counsel objected to the proposed jury instructions, which stated the first element of first-degree criminal sexual conduct as requiring the defendant to have touched the victim's bare genitals with his hand, and requested that the preliminary jury instructions reflect that first-degree criminal sexual conduct requires genital-to-genital conduct.

As a result, the State moved to amend the complaint to add a charge of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subd. 1(a), because the facts, as alleged in the complaint, if proved, would be insufficient to support the first-degree criminal sexual conduct offense previously charged. In support of its motion, the State argued that defense counsel had an obligation to raise the known defect in the complaint before jeopardy attached but failed to do so.[2] The trial court denied the State's motion.

---

1. For purposes of Minn.Stat. § 609.342, subd. 1(a), "sexual conduct with a person under 13" is defined as

   the intentional touching of the complainant's bare genitals or anal opening by the actor's bare genitals or anal opening with sexual or aggressive intent or the touching by the complainant's bare genitals or anal opening of the actor's or another's bare genitals or anal opening with sexual or aggressive intent.

   Minn.Stat. § 609.341, subd. 11(c) (2010).

2. The parties do not appear to dispute the fact that defense counsel knew well before jeopardy had attached that the State had charged first-degree criminal sexual conduct and did not have sufficient evidence to prove that charge. *See State v. Sahr*, No. A10–0074, 2010 WL 2813564, at *1 (Minn.App. July, 20, 2010) ("According to the prosecutor's affidavit, which has not been disputed, Sahr's trial counsel 'stated that he had known for some time Count I was defective because the statute it cited alleged bare genital to genital contact.' "). To the extent that the dissent characterizes defense counsel's conduct as improperly manipulating the proceedings before the court, the record does not support such a characterization.

The following day, defense counsel moved the court to dismiss the complaint sua sponte in the furtherance of justice pursuant to Minn.Stat. § 631.21 (2010).[3] On the same day, the State again moved for inclusion of a lesser-included offense of second-degree criminal sexual conduct. At the hearing on the parties' motions, the State argued that the trial court should characterize Sahr's motion to dismiss the complaint as a request for a mistrial. The trial court rejected the State's argument and dismissed the complaint with prejudice on its own motion and in the furtherance of justice. The State subsequently moved to file a new complaint charging Sahr with second-degree criminal sexual conduct. The trial court denied the State's motion on the basis that filing a new complaint charging second-degree criminal sexual conduct would violate double jeopardy.

The State petitioned the court of appeals for a writ of prohibition and mandamus. Without deciding the merits of the petition, the court of appeals remanded to the trial court for further proceedings regarding the dismissal of the complaint. Specifically, the court of appeals ordered the trial court to address "whether its dismissal order constituted a finding of insufficient evidence to convict" and "whether the offense charged in the new complaint is the 'same offense' as the dismissed count for double jeopardy purposes."

On remand after a hearing, the trial court held that its earlier dismissal of the complaint was based on a finding of insufficient evidence to convict Sahr of first-degree criminal sexual conduct and that the offense set out in the proposed amended complaint was the "same offense" the court had dismissed in the original complaint. Based on those findings, and the fact that jeopardy had attached before the complaint was dismissed, the trial court further found that the "interests of justice" required that the complaint be dismissed under Minn.Stat. § 631.21, and that signing the proposed amended complaint would violate Minn.Stat. § 609.04, subd. 2 (2010) ("A conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime."). On appeal, the court of appeals reversed, concluding that double jeopardy did not bar retrial. We granted Sahr's petition for review and now reverse the court of appeals.

I.

In May 2008, Sahr was charged with first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a), based on a report by his niece that, at some point between June and July of 2006, when she was 6 years old, Sahr "touched her in her private area," touched her vaginal area under her clothing, and rubbed her vaginal area. The case was set for jury trial on February 17, 2009. On that date, before voir dire, the district court prepared and distributed proposed jury instructions to both the State and defense counsel, including CRIMJIG 12.07.[4] The

---

**3.** The statute states, in relevant part:

The court may order dismissal of an action either on its own motion or upon motion of the prosecuting attorney and in furtherance of justice. If the court dismisses an action, the reasons for the dismissal must be set forth in the order and entered upon the minutes.

Minn.Stat. § 631.21.

**4.** CRIMJIG 12.07, Criminal Sexual Conduct in the First Degree–Sexual Contact–Complainant Under 13–Elements, characterizes the first element as

the defendant intentionally touched [victim]'s bare genitals or anal opening with (his)(her) (the defendant's) bare genitals or anal opening, or [victim]'s bare genitals or anal opening touched the bare genitals or anal opening of the defendant [or another].

State had previously requested that the first element of CRIMJIG 12.07 be phrased instead as "the defendant intentionally touched [victim]'s bare genitals with his hand," which the district court included in the jury instructions at issue when trial commenced. After the jury was impaneled and sworn, but before the trial judge began to read the preliminary jury instructions, defense counsel asked that, instead of instructing the jury that an element of the offense was hand-to-genital contact—as the prosecutor had requested for the instructions—the jury be "give[n] the instruction which matches the charged offense" of first-degree criminal sexual conduct, requiring genital-to-genital contact. After this request, the district court adjourned for the day.

The following morning, the State moved to amend its complaint to add a count of second-degree criminal sexual conduct, which is defined in Minn.Stat. § 609.343, subd. 1(a). The State argued that its motion to amend should be granted pursuant to Rule 17.05, which provides that "[t]he court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Minn. R.Crim. P. 17.05. In addition, the State argued that, because defense counsel knew that the allegations comported with second-degree criminal sexual conduct charges well before the start of trial, the defense had an obligation to bring a motion to dismiss pursuant to Minn. R.Crim. P. 17.06 and 10.01.[5] The State also asked that the tri-al court include in its instructions the lesser-included offense of second-degree criminal sexual conduct.

In an order filed on February 18, 2009, the trial court rejected each of the State's arguments. The trial court concluded that granting the State's motion to amend the complaint would violate Minn. R.Crim. P. 17.05 because first-degree criminal sexual conduct—in requiring genital-to-genital contact—contains a different essential element than second-degree criminal sexual conduct—which does not require genital-to-genital contact—and therefore charged a "different offense." Moreover, the trial court concluded that Sahr demonstrated prejudice because allowing the State to amend the complaint "would have affected the defense's trial tactic because the defense would have sought to retain their own expert, and would have made a motion to investigate other potential perpetrators of sexual abuse of the minor child." The trial court also concluded that defense counsel did not have an obligation to bring a motion to dismiss pursuant to Minn. R.Crim. P. 17.06 and 10.01 because doing so "would shift the burden of responsibility in charging to the defendant." Finally, the trial court rejected the State's request to include a lesser-included offense as premature because "[a] request for a lesser included offense would typically be made at the conclusion of the trial." However, the trial court granted the State's request to stay its order for one day to allow the State to seek an emergency extraordinary writ to the appellate courts pursuant to Minn. R. Civ.App. P. 121.01 and 121.02.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Criminal*, CRIMJIG 12.07 (5th ed.2006).

5. Rule 17.06 provides that "[a]ll objections to an indictment, complaint, or tab charge must be made by motion under Rule 10.01...." Minn. R.Crim. P. 17.06, subd. 2. Rule 10.01, in turn, provides, in relevant part: "Defenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial by a motion to dismiss or to grant appropriate relief." Minn. R.Crim. P. 10.01, subd. 2.

The State's requested relief from the appellate courts was denied.

On February 19, 2009, Sahr asked the court to dismiss the complaint on the court's own motion in the furtherance of justice pursuant to Minn.Stat. § 631.21.[6] At the same time, the State again moved for the inclusion of the lesser-included offense of second-degree criminal sexual conduct in the jury instructions. The trial court rejected the State's motion, finding that, based on the State's concession that it lacked sufficient evidence to prove first-degree criminal sexual conduct, "the State's characterization of their anticipated motion for a lesser-included offense instruction is nothing more than a constructive amendment of the Complaint, which this Court has previously denied when presented to this Court pursuant to Minn. R.Crim. P. 17.05." The trial court further noted that:

A prosecutor cannot sidestep the requirement of rule 17.05 simply by moving to charge additional violations, rather than by moving to amend the original complaint. Similarly, when the record demonstrates that a defendant is confronted with a different or an additional charge after trial has begun, such charge constitutes a constructive amendment of the complaint and must comply with the requirements of Minn. R. [Crim.] P. 17.05. Accordingly, this Court will not entertain the motion to add a lesser-included offense instruction to a sole charge that is currently not viable.

(Citations, internal quotation marks, and alterations omitted.)

The trial court also rejected the State's argument that Sahr's motion to dismiss the complaint be characterized as a request for mistrial. The State cited *Lee v.*

*United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), in which the Supreme Court held that a district court's grant of a defendant's motion to dismiss was "functionally indistinguishable from a declaration of mistrial," and therefore the State's subsequent case against the defendant was not barred by double jeopardy. *Id.* at 30–31, 97 S.Ct. 2141. In rejecting the State's argument, the trial court first found that neither party moved for a mistrial nor had intended to do so. The trial court further indicated that it would not characterize defense counsel's motion to dismiss as a request for a mistrial because "to do so would again be a sidestepping of the requirements of Minn. R.Crim. P. 17.05, which motion to amend this Court has previously denied." The trial court distinguished *Lee,* noting that in *Lee,* unlike this case, defense counsel's motion to dismiss was made before jeopardy attached and, therefore, double jeopardy did not bar retrial. The trial court also made a specific finding that there was no bad faith on the part of the State. Ultimately the court, on its own motion and in the furtherance of justice, dismissed the complaint against Sahr with prejudice.

On February 20, 2009, the State moved to file a new complaint charging Sahr with second-degree criminal sexual conduct. In making its motion, the State relied on *State v. Hart,* 723 N.W.2d 254 (Minn.2006), for the proposition that, when a trial court dismisses a complaint in the interests of justice, the State's remedy is to file a new complaint. *Id.* at 258. The trial court found the State's reliance on *Hart* to be misplaced because, unlike *Hart,* jeopardy had attached before the complaint was dismissed in this case. Reasoning that because jeopardy had attached before the

6. Section 631.21 provides that "[t]he court may order dismissal of an action either on its own motion or upon motion of the prosecuting attorney and in furtherance of justice."

complaint was dismissed and therefore re-trial was barred by the Double Jeopardy Clause, the trial court denied the State's motion to file a new complaint. In its order denying the motion, the trial court also incorporated, by reference to its February 19 order, its reasons for dismissing the original complaint.

The State petitioned the court of appeals for a writ of prohibition, staying the trial court order dismissing the complaint, and a writ of mandamus, compelling the trial court to grant the State's motion to amend the complaint to charge second-degree criminal sexual conduct, sign the new complaint charging second-degree criminal sexual conduct, and to vacate its order of dismissal. On April 8, 2009, the court of appeals remanded for the trial court to address: (1) whether its dismissal order constituted a finding of insufficient evidence to convict; and (2) whether the offense charged in the new complaint was the "same offense" as the dismissed count for double jeopardy purposes. We denied the State's petition for further review.

On remand, the trial court held a hearing at which Sahr and the State had the opportunity to argue their respective positions. After the hearing, the trial court issued an order explaining that its February 19 "dismissal order constituted a finding of insufficient evidence to convict Defendant which constitutes the functional equivalent of an acquittal and bars further prosecution." In reaching the conclusion that its dismissal order constituted a finding of insufficient evidence to convict Sahr of first-degree criminal sexual conduct, the trial court relied on the fact that "[ ] the State [did] not have any evidence that [Sahr] intentionally touched [the victim's] bare genitals or anal opening with [his] bare genitals or anal opening." In other words, the trial court dismissed the complaint because the State lacked sufficient evidence to prove an essential element of the offense of first-degree criminal sexual conduct, as charged in the complaint.

The trial court also concluded that the second-degree criminal sexual conduct charge, as alleged in the new complaint, was the "same offense" as the first-degree criminal sexual conduct charge in the original complaint for double jeopardy purposes. The trial court further explained that, based on its conclusions that its dismissal order constituted a finding of insufficient evidence to convict and that the second-degree criminal sexual conduct charge was the "same offense" as the first-degree criminal sexual conduct charge for double jeopardy purposes, as well as the fact that jeopardy had attached at the time the complaint was dismissed, the "interests of justice" required a dismissal of the original complaint under Minn.Stat. § 631.21. In the trial court's view, signing the amended complaint would violate Minn. Stat. § 609.04, subd. 2 (providing that "[a] conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime"), and double jeopardy principles.

On appeal, the court of appeals, concluding that double jeopardy did not bar a new trial for second-degree criminal sexual conduct, issued a writ of mandamus directing the trial court to sign the proposed new complaint. *State v. Sahr*, No. A10–0074, 2010 WL 2813564, at *8 (Minn.App. July 20, 2010). The court of appeals concluded that, because the case was dismissed " 'without any submission to either judge or jury as to [Sahr's] guilt or innocence,' " *id.* at *6 (quoting *United States v. Scott*, 437 U.S. 82, 101, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)), the termination of the trial was " 'functionally indistinguishable from a declaration of mistrial,' " and therefore double jeopardy was not a barrier to re-prosecution. *Id.* (quoting *Lee*, 432 U.S. at

31, 97 S.Ct. 2141). In granting Sahr's petition for review, we ordered the parties to brief the question of whether a defendant waives or forfeits his double jeopardy rights if he fails to raise a known defect in the complaint before jeopardy attaches.

## II.

To resolve this case, the first question we must answer is whether the trial court's dismissal of the complaint constituted an acquittal on the merits. This is because, if the dismissal does not constitute an acquittal on the merits, then neither double jeopardy nor Minn.Stat. § 609.04, subd. 2, will preclude an amendment of a new complaint and a retrial of Sahr. But if the trial court's dismissal of the complaint does constitute an acquittal on the merits, then we must determine whether either double jeopardy or section 609.04, subdivision 2, bars a retrial of Sahr. Based on the record before us, we conclude that the trial court's dismissal of the complaint constituted an acquittal on the merits.

■■■ A trial court's actions constitute "an acquittal on the merits when 'the ruling of the judge, whatever its label, actually represents a resolution [in defendant's favor], correct or not, of some or all of the factual elements of the offenses charged.'" State v. Large, 607 N.W.2d 774, 779 (Minn. 2000) (alteration in original) (quoting United States v. Scott, 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). In determining whether a trial court's ruling represents a resolution in the defendant's favor of some or all of the factual elements of the offense charged, we consider both the form and the substance of the trial court's ruling. Id. at 780. A finding of insufficient evidence to convict amounts to an acquittal on the merits because such a finding involves a factual determination about the defendant's guilt or innocence.

See Sanabria v. United States, 437 U.S. 54, 59, 68–69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

In Sanabria, the federal district court had acquitted the defendant after erroneously excluding evidence and concluding that the remaining evidence was insufficient to convict. 437 U.S. at 59, 98 S.Ct. 2170. The Supreme Court held that the district court's action, "however erroneous," amounted to an acquittal on the merits because the lower court made a factual determination about guilt or innocence. Id. at 68–69, 74, 98 S.Ct. 2170. We applied the holding from Sanabria in Large, in which the trial court dismissed the fourth count of the complaint, over which the jury was deadlocked, after the defendant was acquitted by the jury of the three other charges in the complaint. 607 N.W.2d at 777, 780. We stated that "even if [the trial court's] legal ruling was in error," the trial court's action amounted to an acquittal on the merits because the trial court, after looking at the remaining evidence, determined that the State had not produced sufficient evidence to establish Large's guilt on the remaining count. Id. at 780.

■■ In this case, based on the State's concession that it lacked sufficient evidence to prove an essential element of first-degree criminal sexual conduct, the trial court made extensive, detailed, and specific findings in four separate orders making it clear that its dismissal of the complaint constituted a decision in Sahr's favor on the essential elements of the charged offense and that it did not contemplate that Sahr would be subject to retrial. In its February 18 order, the trial court denied the State's motion to amend the complaint to add a count of second-degree criminal sexual conduct based on the court's conclusion that doing so would violate Minn. R.Crim. P. 17.05. In doing so, the trial court found that, for purposes of

Minn. R.Crim. P. 17.05, first-degree criminal sexual conduct is a different offense than second-degree criminal sexual conduct and that amending the complaint would prejudice Sahr. The trial court also denied, as premature, the State's motion to instruct the jury on the lesser-included offense of second-degree criminal sexual conduct.

In its February 19 order, the trial court again denied the State's motion for a lesser-included offense instruction on second-degree criminal sexual conduct. Specifically, the trial court stated that, based on the State's concession that it could not prove each of the elements of the first-degree criminal sexual conduct charge, "the State's characterization of their anticipated motion for a lesser-included offense instruction is nothing more than a constructive amendment of the Complaint, which this Court has previously denied when presented to this Court pursuant to Minn. R.Crim. P. 17.05." The trial court also denied the State's request to characterize Sahr's motion to dismiss as a request for mistrial because "to do so would again be a sidestepping of the requirements of Minn. R.Crim. P. 17.05, which motion to amend this Court has previously denied." In declining to characterize the dismissal as a mistrial, the trial court rejected the State's argument based on *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). In *Lee*, the Supreme Court held that the district court's grant of a defendant's motion to dismiss was essentially a declaration of mistrial, thereby allowing the State to continue its subsequent prosecution against the defendant. *Id.* at 30–31, 97 S.Ct. 2141. The trial court distinguished *Lee* based on the fact that in *Lee*, unlike in this case, jeopardy had not attached at the time defense counsel's motion to dismiss was made. Moreover, in rejecting the State's argument regarding characterization of

the dismissal as a mistrial, the trial court clearly found, as a matter of fact, that neither Sahr nor the State had requested a mistrial, that there was no basis for a mistrial, and that in dismissing the complaint it was not granting a mistrial on its own motion. The trial court's order also made clear that, in dismissing the complaint, it did not contemplate a retrial. The February 19 order concluded by ordering, on its own motion and in the furtherance of justice, the complaint to be dismissed with prejudice.

In its February 20 order, the trial court denied a motion by the State to file a new complaint charging second-degree criminal sexual conduct based on the court's conclusion that double jeopardy barred retrial. In doing so, the trial court rejected the State's reliance on *State v. Hart*, 723 N.W.2d 254 (Minn.2006), in which we concluded that the State may re-file a complaint when the trial court dismisses a complaint in the interests of justice before jeopardy attaches—because, as it had previously noted, jeopardy had attached before the case was dismissed.

Finally, in its January 2010 order on remand, the trial court explained that its February 19 "dismissal order constituted a finding of insufficient evidence to convict Defendant which constitutes the functional equivalent of an acquittal and bars further prosecution" and that the second-degree criminal sexual conduct charge in the new complaint was the "same offense" as the first-degree criminal sexual conduct charge in the original complaint for double jeopardy purposes. Based on these findings, and because jeopardy had attached, the trial court reiterated its conclusion that the "interests of justice" required a dismissal of the original complaint under Minn.Stat. § 631.21, and that signing the amended complaint would violate Minn.Stat.

§ 609.04, subd. 2, and double jeopardy principles.

Based on these orders, we can only conclude that, in both form and substance, the dismissal of the State's original complaint was a resolution of the factual elements of first-degree criminal sexual conduct. The trial court made clear, consistent, and explicit findings that its dismissal of the original complaint was based on the State's concession that the State could not prove all of the elements necessary to support a first-degree criminal sexual conduct conviction. The trial court also made clear that neither Sahr nor the State had sought a mistrial, and that it did not grant a mistrial when it dismissed the complaint. Moreover, it is evident that, in dismissing the complaint, the trial court did not expect that Sahr would be retried. Accordingly, we conclude that the trial court's dismissal of the complaint based on the finding that there was insufficient evidence to convict Sahr of first-degree criminal sexual conduct constituted an acquittal on the merits.

### III.

■ Having concluded that the trial court's dismissal of the original complaint constituted an acquittal on the merits, we turn next to the question of whether Sahr's statutory and constitutional double jeopardy protections preclude the State from filing a new complaint charging Sahr with second-degree criminal sexual con-

duct and trying him on that offense.[7] Applying the legal principles set forth in *State v. Large,* 607 N.W.2d 774, 780–81 (Minn.2000), to the facts in Sahr's case, we conclude that we are precluded from considering the merits of the State's claims that Sahr had a duty to bring a pretrial motion to dismiss the complaint and that Sahr waived his double jeopardy protections by failing to bring a pretrial motion to dismiss the complaint.

In *Large,* we held that when there is an acquittal on the merits, double jeopardy bars review of any underlying issues, including erroneous legal rulings. 607 N.W.2d at 780–81. The State raised the issue of Sahr's failure to bring a motion to dismiss the complaint pursuant to Minn. R.Crim. P. 17.06 and 10.01. The trial court concluded that defense counsel did not have an obligation to bring a pretrial motion to dismiss the complaint because doing so "would shift the burden of responsibility in charging to the defendant." Even if the trial court's conclusion was in error, the legal principles set forth in *Large,* 607 N.W.2d at 780–81, prevent us from reviewing the trial court's conclusion for any purpose.[8]

The dissent contends that our analysis prevents review of the issue of whether a defendant waives his double jeopardy protections by deliberately failing to raise a known defect in the complaint before the jury is sworn. To be clear, in accordance with *Large,* we cannot, and do not, decide

---

**7.** Minnesota Statutes § 609.04, subd. 2, provides: "A conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime." Here, the second-degree criminal sexual conduct is an "other degree" of first-degree criminal sexual conduct. The Minnesota Constitution provides that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. The United States Constitution provides that no person shall "be subject for the same offence to be

twice put in jeopardy of life or limb." U.S. Const. amend. V.

**8.** Similarly, we may not, and do not, consider whether the trial court erred when it denied the State's motions to add a lesser-included jury instruction on second-degree criminal sexual conduct and to amend the original complaint to add a count of second-degree criminal sexual conduct.

the merits of the waiver issue. Although *Large* precludes consideration of the waiver issue in Sahr's case, the waiver issue could squarely present itself under different facts. For example, if the trial court had concluded (1) that Sahr had a duty to file a pretrial motion to dismiss the complaint, (2) that Sahr waived his double jeopardy protections by deliberately failing to raise a known defect in the complaint before the jury was sworn, and (3) that double jeopardy did not prohibit the State from filing a new complaint, the waiver issue would have been squarely presented on appeal from a subsequent conviction.[9] However, these are not the facts here.

The dissent also contends the underlying issue of whether the Minnesota Rules of Criminal Procedure required Sahr to raise a known defect in the complaint is unlike the legal issue raised in *Large:* whether in accordance with Minn.Stat. § 609.035 (2010), an acquittal on a sexual-penetration charge also constituted an acquittal on all lesser-included charges. *See* 607 N.W.2d at 777–78. We can discern no relevant distinction between these two issues. Like the district court's interpretation of Minn. Stat. § 609.035 in *Large,* the district court's interpretation of Minn. R.Crim. P. 17.06 and 10.01 in Sahr's case led the court to enter an acquittal on the merits. In accordance with *Large,* 607 N.W.2d at 780–81, we are precluded from considering the merits of the State's claims that Sahr had a duty to bring a pretrial motion to dismiss the defective complaint and that Sahr waived his double jeopardy protections by failing to bring a pretrial motion to dismiss. Consequently, we reverse the court of appeals' decision and reinstate the district court's order denying the State's motion to file a new complaint.

Reversed.

ANDERSON, G. BARRY, Justice (concurring).

The majority opinion, concluding that an acquittal on the merits occurred here, properly does not reach the merits of the waiver of the right to challenge a defect in the complaint or the double jeopardy arguments. I join the majority opinion but write separately because, in my view, the dissent does not adequately acknowledge the complexity of the underlying issues.

I begin with the observation that this case rests at the intersection of constitutional and statutory protections against self-incrimination and provisions of the Minnesota Rules of Criminal Procedure. The dissent argues that "the district court erred when it considered Sahr's untimely motion to dismiss the complaint based on a known defect in the complaint after the jury was sworn." The dissent also argues that when a defendant deliberately fails to raise a known defect in the complaint before the jury is sworn, constitutional and statutory double jeopardy protections do not bar future prosecution. The implication of this latter argument is that a defendant not only has a right, but an obligation, to challenge known defects in a complaint before trial and failure to do so not only results in a waiver of the right to challenge the complaint at a later time, it also automatically results in forfeiture of double jeopardy protections.

I turn first to the waiver argument. Although it seems self-evident, as the dissent argues, that our rules require a defendant in a criminal proceeding to make a

---

9. The dissent concedes that our analysis allows review of the issue in question when a district court denies a defendant's motion to dismiss a defective complaint after the jury is sworn.

motion for dismissal of a complaint including "all defenses, objections, issues, and requests then available," and that failure to do so "constitutes waiver," Minn. R.Crim. P. 10.01, subd. 2, whether that provision applies to what occurred here is less clear.

What happened here was not the failure of the State to draft a sufficiently detailed complaint, such as was alleged to have occurred in *State v. Stagg*, 342 N.W.2d 124 (Minn.1984). Here, the prosecution charged the wrong offense altogether, an offense which everyone concedes the defendant was not guilty of. Not cited by either party, but perhaps relevant here, are the provisions of Rule 9, which require the defense to inform the prosecutor in writing of "any defense, *other than not guilty*, that the defendant intends to ·assert." Minn. R.Crim. P. 9.02, subd. 1(5) (emphasis added). The dissent dismisses this language by characterizing it as a discovery rule; perhaps, although the relevance of that characterization is not immediately evident. What it does suggest, however, is that a defendant has no obligation to tell the State it cannot prove the crime charged. The dissent cites no authority, and I have not found any, that specifically holds that the provisions of Minn. R.Crim. P. 10.01 apply to the kind of fundamental failure of the State to charge the appropriate offense at issue here.

Key to the argument of the dissent is that Sahr made an untimely motion to dismiss the complaint *based on a known defect in the complaint* after the jury was sworn. But the dissent does not point to any specific language or behavior on the part of the defendant that challenges the adequacy of the complaint. Although the defendant requested that the district court on its own motion dismiss the complaint in the interests of justice pursuant to Minn. Stat. § 631.21 (2010), the defendant never cited the inadequacy of the complaint as the legal grounds for dismissal. Instead, Sahr's request could be more properly seen as a motion for judgment of acquittal pursuant to Minn. R.Crim. P. 26.03 [1] based on the fact that there was insufficient evidence to sustain a conviction.[2] Although a

---

1. Minnesota Rule of Criminal Procedure 26.03, subdivision 18, provides:

   At the close of evidence for either party, the defendant may move for, or the court on its own may order, a judgment of acquittal on one or more of the charges if the evidence is insufficient to sustain a conviction.

2. The dissent relies heavily on our decision in *State v. Holton*, 88 Minn. 171, 92 N.W. 541 (1902), for its conclusion that there was no final judgment of acquittal by the district court. The position of the dissent is not without merit, and the meaning and applicability of *Holton* awaits determination in some future dispute; among other complications, neither the language used by our court nor the procedural background to *Holton* are easily translatable to present-day practice. But it bears recognizing here that the facts of *Holton* are distinguishable from the facts of this case. In *Holton*, after the jury was impaneled and sworn, the defendant objected to the presentation of any evidence because the in-

   dictment did not state a public offense. *Id.* at 172, 92 N.W. at 541. The objection was sustained by the district court, and we agreed and dismissed the indictment. *Id.* at 172–73, 92 N.W. at 541–42. In holding that there was no final judgment, we stated:

   [W]here the defendant raises the question of the sufficiency of the *indictment* at the trial, and the court correctly holds that it does not state facts constituting a public offense, and, as in this case, dismisses the indictment, there is and can be no final judgment. . . .

   *Id.* at 174, 92 N.W. at 542 (emphasis added). Unlike the defendant in *Holton*, Sahr never formally objected to the complaint based on a defect. Furthermore, the district court in this case did not dismiss the case because the complaint failed to state the elements of a crime, as is essentially what happened in *Holton*, but rather because the evidence was insufficient to sustain a conviction, and concluded that because the merits of the offense

motion for judgment of acquittal is typically made at the close of evidence for either party, here the State conceded on the record that it did not have sufficient proof to establish the charged crime. At the end of the day, the applicability of the waiver argument under Rule 10 is much more complicated than a simple recitation of the rule would seem to suggest.

But even if we assume the failure to timely raise objections to the complaint may result in a waiver of the right to challenge the complaint at a later time, it is not self-evident that such a waiver also necessarily results in the forfeiture of the constitutional and statutory protections against double jeopardy. The dissent relies heavily on *United States v. Kehoe,* 516 F.2d 78 (5th Cir.1975), for its argument, which is not entirely on point here. In *Kehoe,* after the jury was impaneled and the government had presented its case-in-chief, the defendants "moved for a judgment of acquittal on the ground, inter alia, that the indictment failed to charge an offense," and the district court granted the motion. *Id.* at 81 (internal quotations marks omitted). Shortly thereafter, the government procured a new indictment against the defendants for the same offense, and the defendants moved to dismiss the indictment, contending that double jeopardy barred the new indictment. *Id.* The Fifth Circuit recognized that a "verdict of acquittal ... is a bar to a subsequent prosecution for the same offense." *Id.* at 82. (citation omitted) (internal quotation marks omitted). But because it determined that the district court's order was not a judgment of acquittal,[3] the Fifth Circuit proceeded to a double jeopardy analysis and concluded as follows:

> [A] defendant who for reasons of trial tactics delays until mid-trial a challenge to the indictment that could have been made before the trial—and before jeopardy has attached—is not entitled to claim the protection of the double jeopardy clause when his objections to the indictment are sustained.

*Id.* at 86.

In *Kehoe,* the Fifth Circuit based its holding on the fact that the defendants waited until midtrial to challenge the indictment.[4] Here it is unclear whether

had been reached double jeopardy barred further prosecution. As we recognized in *Holton,* an "acquitt[al] on the merits" operates to bar a second prosecution. *Id.* at 174, 92 N.W. at 542.

The dissent's claim that there was no final judgment because the district court dismissed the case on the "ground[s] of a variance between the indictment and the proof" is an unwarranted expansion of our holding in *Holton. Id.* at 174, 92 N.W. at 542. Based on the facts of *Holton,* there is no reason to conclude that the language—"acquitted on the ground of a variance between the indictment and the proof"—applies to dismissal due to insufficiency of the evidence in addition to dismissal based on insufficiency of the complaint. *Id.* at 174, 92 N.W. at 542.

3. In reaching this conclusion, the Fifth Circuit stated:

In these circumstances [the district court]'s ruling can only be characterized as purely legal—and hence not an acquittal. There was no conclusion on innocence or guilt. Consequently, since the rule forbidding further proceedings after an acquittal is inapplicable here, we must now consider whether the double jeopardy clause prohibits further prosecution of defendants who procure the mid-trial dismissal of the indictment on the ground that it fails to state an offense.

*Id.* at 83.

4. The dissent does not define what constitutes a "midtrial" challenge to a complaint. But the dissent suggests that the "defense counsel raised the issue" of the inadequacy of the complaint when it asked for certain jury instructions. Although I do not argue for any specific definition of a "midtrial" challenge to a complaint, the inclusion of requests for jury

Sahr ever challenged a known defect in the complaint, because it is at least arguable that he instead made a motion for judgment of acquittal based on insufficient evidence. The dissent departs from the reasoning of *Kehoe* by concluding instead that when a defendant "fail[s] to raise a known defect in the complaint before trial, as required by court rule," the defendant is not entitled to protection against double jeopardy. In other words, neither *Kehoe* nor the dissent address the possible situation in this case: Sahr did not object to the complaint, either before or during the trial, and the case was decided on its merits after the jury was impaneled and sworn. The logical extension of the dissent's analysis suggests that even in this situation, Sahr would not be entitled to double jeopardy protection, a proposition for which there is no support.[5]

Key to the argument of the dissent is that there is an obligation on the part of the defendant to challenge known defects in the complaint. The dissent cites no authority for this proposition, and I can find none. What little we have said hints otherwise. For example, in *State v. Ewing*, we observed "the state is required to establish by proof beyond a reasonable doubt all of the essential elements of the crime with which the defendant is charged in the indictment. In the absence of such a degree of proof of the defendant's guilt he is entitled to an acquittal." 250 Minn. 436, 442, 84 N.W.2d 904, 909–10 (1957). Additionally, lurking in the background are interesting constitutional self-incrimination arguments. Does requiring a defendant to make a motion challenging a fundamentally flawed complaint, essentially asserting that the defendant is not guilty of the charged offense but, by implication, might be guilty of some other offense, violate the prohibition against self-incrimination set out in the Fifth Amendment to the United States Constitution?

My point in this concurring opinion is not to argue that the dissent is wrong or to argue for an alternative disposition of these issues, but simply to note the significant challenges and complications inherent in unraveling some of the underlying issues that the majority opinion correctly does not reach and that the dissent suggests, incorrectly in my view, are easily resolved.

Because I conclude there is a good-faith argument that the defendant was not obligated to give notice to the State of its failure to charge the correct offense, it necessarily follows that I do not agree that

---

instructions within that definition is at best an awkward fit.

**5.** In *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), the Supreme Court held that a verdict of acquittal, in a case in which a defendant has failed to object to the indictment as insufficient, is a bar to a second indictment. Although *Ball* involved a verdict of acquittal instead of a mistrial, the facts are similar to the case at hand, and *Ball* is therefore instructive. In that case three men were indicted and tried for murder; two were convicted by a jury and one acquitted. *Id.* at 663–64, 16 S.Ct. 1192. The Supreme Court reversed the convictions on the ground that the indictment was fatally deficient in "failing to aver either the time or the place of the [victim's] death." *Id.* at 664, 16 S.Ct. 1192. Shortly thereafter a proper indictment was returned and the government retried all three of the original defendants; that trial resulted in the conviction of all. *Id.* at 665–66, 16 S.Ct. 1192. The Supreme Court reversed the conviction of the one defendant who originally had been acquitted, sustaining his claim of double jeopardy:

[W]e are unable to resist the conclusion that a general verdict of acquittal upon the issue of not guilty to an indictment undertaking to charge murder, and not objected to before the verdict as insufficient in that respect, is a bar to a second indictment for the same killing.

*Id.* at 669, 16 S.Ct. 1192.

counsel for the defendant committed "rule violations" nor do I agree that defense counsel "improperly manipulated" court procedures. Although the final answer to all of the constitutional and rule-based questions raised by this appeal awaits another day, I find nothing improper in the actions of defense counsel.

DIETZEN, Justice (dissenting).

This case squarely presents an important statewide issue of first impression: whether the double jeopardy protections, provided by statute and the state and federal constitutions, bar future prosecution when a defendant deliberately fails to raise a known defect in the complaint before the jury is sworn. The Minnesota Rules of Criminal Procedure have long required that a defendant must bring a motion to dismiss the complaint before the omnibus hearing. Appellant Sahr knew the complaint had a curable defect and deliberately failed to raise the defect in order to improperly manufacture a double jeopardy defense. In my view, the district court erred when it considered Sahr's untimely motion to dismiss the complaint based on a known defect in the complaint after the jury was sworn. I also conclude that Sahr's rule violation prevents him from asserting the protections of the double jeopardy statute, Minn.Stat. § 609.04 (2010), and the double jeopardy provisions of the state and federal constitutions, Minn. Const. art. I, § 7 and U.S. Const. amend. V.

The majority contends that the district court's order dismissing the complaint constituted an acquittal on the merits, and concludes that further prosecution is therefore barred by double jeopardy. The reasoning to support its contention, however, is flawed. Specifically, the dismissal of a complaint upon the State's concession that the facts alleged in the complaint do not support the charged offense is not a determination of innocence by the fact-finder, and therefore is not an acquittal on the merits. Instead, it is a dismissal on the grounds of a variance between the charging document and the proof.[1] *See State v. Holton,* 88 Minn. 171, 174, 92 N.W. 541, 542 (1902) (explaining that there is no final judgment of acquittal when a district court dismisses a charging document on the grounds of a variance between the charging document and the proof, or the charging document "was dismissed upon an objection to its form or substance"). As Abraham Lincoln wisely recognized, *"[C]alling* the tail a leg would not make it a leg." *The Yale Book of Quotations* 465 (Fred R. Shapiro ed., 2006). To explain my dissent, I first describe the relevant facts, then consider issues related to Sahr's deliberate failure to raise a known defect in the complaint, and then examine the district court's dismissal of the complaint.

I.

The relevant facts are that appellant Michael Sahr's 8–year–old niece reported to police that Sahr rubbed her bare vaginal area with his hand. Based on the report, respondent State of Minnesota charged Sahr with first-degree "sexual contact with a person under 13 years of age" in violation of Minn.Stat. § 609.342, subd. 1(a) (2010) (prohibiting a person from having "sexual contact with a person under 13 years of age"). Sahr's alleged conduct fell within the statutory definition of "sexual

---

1. Moreover, we have explained that a construction of Minn.Stat. § 631.21 (2010) (authorizing the district court to dismiss a complaint in the interests of justice) allowing dismissals that preclude further charges would arguably violate the separation of powers doctrine. *State v. Streiff,* 673 N.W.2d 831, 838 (Minn.2004).

contact," which is broadly defined as "the intentional touching by the actor of the complainant's intimate parts [with sexual or aggressive intent]." Minn.Stat. § 609.341, subd. 11(a)(i) (2010). But Sahr's alleged conduct did not fall within the more specific statutory definition of "sexual contact with a person under 13" years of age, which is narrowly defined as "the intentional touching of the complainant's bare genitals .. by the actor's bare genitals ... with sexual or aggressive intent." Minn.Stat. § 609.341, subd. 11(c) (2010) (emphasis added).

After reviewing the complaint, defense counsel knew the complaint was defective because it charged the "wrong offense." Specifically, the complaint charged an offense requiring bare genital-to-genital contact, when the probable cause section of the complaint did not allege bare genital-to-genital contact and the State had no evidence of bare genital-to-genital contact. Had the charging defect been brought to the prosecutor's attention, the State could have cured the defect by amending the charged offense to second-degree sexual contact in violation of Minn.Stat. § 609.343, subd. 1(a) (2010) (prohibiting a person from engaging in "sexual contact with another" when the complainant is under 13 years of age). Despite the requirement that a motion to dismiss a complaint must be made 3 days before the omnibus hearing, see Minn. R.Crim. P. 10.03, subd. 1; Minn. R.Crim. P. 17.06, subd. 3, defense counsel deliberately remained silent about the curable defect in the complaint, and

improperly manipulated the proceedings before the court.

After the jury was impaneled and sworn, defense counsel raised the issue of the State's inability to prove the elements of first-degree criminal sexual conduct because the facts alleged in the complaint, if proved, would be insufficient as a matter of law to support the first-degree criminal sexual conduct offense charged. The State immediately moved to amend the complaint to add a charge of second-degree criminal sexual conduct. The district court denied the State's motion, erroneously concluding that the amendment charged a different offense and was therefore prohibited by Minn. R.Crim. P. 17.05.[2]

Defense counsel then requested that the district court on its own motion dismiss the complaint in the interests of justice pursuant to Minn.Stat. § 631.21 (2010). Section 631.21 allows the court to order dismissal of an action on its own motion, or on motion of the prosecuting attorney, and in furtherance of justice.[3] A defendant's request for a dismissal under Minn.Stat. § 631.21, cannot reasonably be described as a dismissal ordered on the district court's own motion because the statute is limited to motions to dismiss made by the court or prosecutor. The State correctly argued that defense counsel's request was really a disguised motion for a mistrial. The district court rejected the State's argument and dismissed the complaint in the furtherance of justice, without resolving any dispute regarding the available evidence.

2. The district court erred when it denied the State's motion to amend the complaint because second-degree criminal sexual conduct was a lesser-included offense and Minn. R.Crim. P. 17.05 does not prohibit amendments that allege lesser-included offenses. See State v. Gisege, 561 N.W.2d 152, 157 (Minn.1997) (explaining that a trial court may

instruct the jury to find the defendant guilty of any offense necessarily included in the offense with which the defendant is charged).

3. In effect, defense counsel moved to dismiss the complaint in the interests of justice, even though section 631.21 does not authorize such a motion by the defense.

When the State later moved to file a new complaint charging Sahr with second-degree criminal sexual conduct, the district court denied the motion, concluding that a new complaint charging second-degree criminal sexual conduct would violate the principles of double jeopardy. The State petitioned the court of appeals for writs of prohibition and mandamus. Without deciding the merits of the petition, the court of appeals remanded to the district court for further findings regarding the dismissal of the complaint.

On remand, the district court characterized its midtrial dismissal of the complaint as a finding of insufficient evidence to convict Sahr of first-degree criminal sexual conduct. The district court then reaffirmed its denial of the State's motion to file a new complaint, explaining that continued prosecution would violate Minn.Stat. § 609.04, and the state and federal Double Jeopardy Clauses. On appeal, the court of appeals reversed the district court's denial of the State's motion to file a new complaint, concluding that state and federal Double Jeopardy Clauses did not bar further prosecution.

We granted Sahr's petition for review. In our order granting review, we directed the parties "to include in their briefs a discussion of whether a defendant waives or forfeits his double jeopardy rights if he fails to raise a known defect in the complaint before jeopardy attached."

## II.

We have not previously considered the effect of a defendant's intentional violation of a court rule on the defendant's ability to assert the double jeopardy protections set forth in Minn.Stat. § 609.04 and the Double Jeopardy Clauses.[4] The majority argues that our decision in *State v. Large*, 607 N.W.2d 774 (Minn.2000), prevents the court from considering whether Sahr is precluded from asserting the protections of double jeopardy in this case. I disagree for three reasons.

First, in *Large* there was no claim that Large deliberately engaged in conduct that allowed him to assert the protections of double jeopardy, so we did not need to decide the threshold issue of whether Large could assert a double jeopardy claim. Instead, the alleged error in *Large* was whether the district court improperly construed Minn.Stat. § 609.035 (2010), when it concluded the jury's "not guilty" verdict on a sexual misconduct charge that required penetration prevented consideration of the State's evidence of an act of sexual contact that occurred during the same behavioral incident. *Large*, 607 N.W.2d at 778–80. After reviewing the remaining evidence, the district court in *Large* concluded the State "had not produced evidence sufficient to establish [Large]'s guilt on the [sexual contact] count." *Id.* at 780.

Second, the majority interprets *Large* to conclude that a defendant's rule violation in failing to raise a known defect in a complaint before jeopardy attaches is not appealable by the State. Specifically, the new majority rule would allow review of

---

**4.** The United States Supreme Court has also never considered the issue. *See Serfass v. United States*, 420 U.S. 377, 394, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) (explaining that the Court did not "intimate any view concerning the case put by the Solicitor General, of 'a defendant who is afforded an opportunity to obtain a determination of a legal defense prior to trial and nevertheless knowingly allows himself to be placed in jeopardy before raising the defense' "); *Sanabria v. United States*, 437 U.S. 54, 77–78, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (explaining that Sanabria's case did not present the issue reserved in *Serfass* because the motion in question did not involve a legal defense capable of being resolved before trial).

the rule violation issue by a defendant when a district court denies a defendant's motion to dismiss a defective complaint after the jury is sworn, but not allow review when a district court grants the motion to dismiss. The majority's argument is not supported by our analysis in *Large*, and will reward rule violations by a defendant and his attorney. In my view, the majority's new rule will result in more rule violations by a defendant and his attorney to achieve an acquittal through any means.

Third, the majority transforms the narrow rule announced in *Large* into a blanket rule that bars review of any legal issue related to a defendant's assertion of double jeopardy protections. Such an expansion is not required by our analysis in *Large* and is a departure from Supreme Court precedent, including *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), and *Sanabria v. United States*, 437 U.S. 54, 77–78, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). Our analysis in *Large* is consistent with the United States Supreme Court's analysis in *Rumsey*. The alleged error in *Rumsey* was that the district court improperly construed a statute defining the pecuniary gain aggravating sentencing factor, when the district court concluded the prosecution failed to prove the existence of the pecuniary gain sentencing factor. 467 U.S. at 205–06, 211, 104 S.Ct. 2305. The Court emphasized in *Rumsey* that " '[t]he fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles ... affects the accuracy of that determination, but it does not alter its essential character.' " *Id.* at 211, 104 S.Ct. 2305 (quoting *United States v. Scott*, 437 U.S. 82, 98, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (internal quotation marks omitted)).

Our analysis in *Large* is also consistent with the United States Supreme Court's

analysis in *Sanabria*. The alleged error in *Sanabria* was that the district court improperly construed the language of the indictment when it excluded certain evidence at trial. 437 U.S. at 68, 98 S.Ct. 2170. After the parties presented their evidence, Sanabria moved for a judgment of acquittal arguing that without the excluded evidence, the prosecution failed to prove the charge in question. *Id.* at 58–59, 98 S.Ct. 2170. The district court granted Sanabria's motion for a judgment of acquittal. *Id.* at 59, 98 S.Ct. 2170. On appeal, the United States Supreme Court characterized the district court's action as "an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence," and therefore "[t]hat judgment of acquittal, however erroneous, bar[red] further prosecution on any aspect of the [charge in question]." *Id.* at 68–69, 98 S.Ct. 2170.

Unlike *Large*, *Rumsey*, and *Sanabria*, the alleged error in Sahr's case does not involve an exclusion of evidence that led to an acquittal for insufficient evidence. Instead, the alleged error here is whether the district court improperly considered Sahr's untimely motion to dismiss the complaint based on a known defect in the complaint after the jury was sworn. The procedural ruling that allowed Sahr to move for dismissal after the jury was sworn did not exclude or otherwise limit the State's evidence, and therefore did not lead to an acquittal for insufficient evidence. The majority's broad reading of *Large* creates the blanket rule that an acquittal on the merits bars review of any issue, including a procedural objection, whenever the issue relates to a defendant's assertion of double jeopardy protections. Such an expansive view is not required by *Large*, and represents a departure from existing Supreme Court precedent, including *Rumsey* and *Sanabria*. Because *Large* does not prevent us from considering whether the district court erred when

it considered the merits of Sahr's untimely motion to dismiss the complaint, I now consider that issue.

The Minnesota Rules of Criminal Procedure "are intended to provide a just determination of criminal proceedings, and ensure a simple and fair procedure that eliminates unjustified expense and delay." Minn. R.Crim. P. 1.02; *accord State v. Lefthand*, 488 N.W.2d 799, 802 (Minn. 1992). To ensure fair criminal proceedings, Minn. R.Crim. P. 10.01, subd. 2, provides that "[d]efenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial."[5] A motion to dismiss a complaint must be made 3 days before the omnibus hearing. Minn. R.Crim. P. 10.03, subd. 1; Minn. R.Crim. P. 17.06, subd. 3. If a complaint is dismissed for a curable defect, "further prosecution for the same offense will not be barred." Minn. R.Crim. P. 17.06, subd. 4(3). The phrase "same offense" encompasses lesser-included offenses because they are subsumed in the greater offense. *State v. Pettee*, 538 N.W.2d 126, 129 n. 2 (Minn.1995). In sum, the Minnesota Rules of Criminal Procedure ensure fairness in criminal proceedings by requiring a defendant to object to curable defects in a complaint so the State has an opportunity to cure the defect before trial. Consequently, the district court erred when it considered Sahr's untimely motion for dismissal of the complaint when Sahr failed to raise the known defect in the complaint before the jury was sworn.

I next consider whether Sahr's rule violation prevents him from asserting the protections of the double jeopardy statute, Minn.Stat. § 609.04, and the double jeopardy provisions of the state and federal constitutions, Minn. Const. art. I, § 7 and U.S. Const. amend. V. "The Double Jeopardy Clauses of the United States and Minnesota Constitutions protect a criminal defendant from a second prosecution for the same offense after an acquittal on the merits." *Large*, 607 N.W.2d at 778 (footnote omitted). Similarly, Minn.Stat. § 609.04, subd. 2, provides that an "acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime." Jeopardy attaches when the jury is impaneled and sworn. *Large*, 607 N.W.2d at 778. But absent a "risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass v. United States*, 420 U.S. 377, 391–92, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).

In describing the principle underlying double jeopardy protection, we have said, "[t]he protective doctrine of double jeopardy [whether pursuant to constitutional provision or statute] is nothing more than the declaration of an ancient and well-established *public policy* that no man should be unduly harassed by the state's being permitted to try him for the same offense again and again until the desired result is achieved." *State v. Thompson*, 241 Minn. 59, 62, 62 N.W.2d 512, 516 (1954). The United States Supreme Court has similarly described the principle underlying the Double Jeopardy Clause:

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an

---

**5.** The "failure of the … complaint to charge an offense" exception to Rule 10.01, subd. 2, does not apply in this case because Sahr does not contend that, if proven, the facts alleged in the complaint would not constitute a crime. *See State v. McIntyre*, 19 Minn. 93, 95 (Gil. 65, 66–67) (1872).

alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Scott*, 437 U.S. at 87, 98 S.Ct. 2187 (internal quotation marks omitted) (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

In *Scott*, the Court held that further prosecution of a defendant after a midtrial dismissal due to the government's preindictment delay did not violate any of the interests protected by the Double Jeopardy Clause. *Id.* at 98, 100, 98 S.Ct. 2187. The underlying double jeopardy principle is not implicated when a defendant "chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt." *Id.* at 96, 98 S.Ct. 2187.

But the Court has emphasized that the Double Jeopardy Clause prohibits further prosecution when a district court's action, however erroneous, amounts to an acquittal on the merits. *Rumsey*, 467 U.S. at 211, 104 S.Ct. 2305; *Scott*, 437 U.S. at 98, 98 S.Ct. 2187; *Sanabria*, 437 U.S. at 64, 98 S.Ct. 2170. As discussed above, we reached a similar conclusion in *Large*, 607 N.W.2d at 779–80, when we concluded that the district court's midtrial dismissal implicated the underlying double jeopardy principle, even if the court's legal ruling was erroneous.

Notably, however, the Fifth Circuit has opined that a defendant who waits until midtrial to raise a known defect in the indictment is not entitled to the protection of the Double Jeopardy Clause. *See United States v. Kehoe*, 516 F.2d 78, 86 (5th Cir.1975); *cf.* 3 Nancy Hollander et al., *Wharton's Criminal Procedure* § 13:7 (14th ed.2010) (explaining that "courts have refused to recognize the bar of prior jeopardy where the defendant obtains an acquittal through the use of fraud or corruption"). Citing *Kehoe*, the Minnesota Court of Appeals has stated in dicta that it "would never condone" a defense tactic of intentionally delaying a motion to dismiss until after jeopardy attached. *State v. Rhines*, 435 N.W.2d 542, 545–46 (Minn. App.1989), *rev. denied* (Minn. Mar. 17, 1989); *cf. State v. Goelz*, 743 N.W.2d 249, 261 (Minn.2007) (Anderson, C.J., concurring) (stating that courts "'disfavor the deliberate tactic of lying in the weeds in anticipation of an ambush'" in the context of introducing impeachment evidence on rebuttal (internal quotation marks omitted) (quoting *United States v. Calvert*, 523 F.2d 895, 912 (8th Cir.1975))).

Our rules of criminal procedure clearly state that challenges to a complaint must be raised by motion at least 3 days before the omnibus hearing. Sahr's counsel deliberately chose to not raise the known defect in the complaint until after the jury was sworn to prevent the State from curing the defect before jeopardy attached.[6]

---

6. Defense counsel's deliberate manipulation of the court proceedings is evidenced in part by the unambiguous nature of the defect in the complaint. The record unequivocally shows the following. First, the complaint charged an offense requiring bare genital-to-genital contact, but the probable cause sec-tion of the complaint did not allege bare genital-to-genital contact and the State had no evidence of bare genital-to-genital contact. Second, the language of the complaint cannot reasonably be interpreted as alleging bare genital-to-genital contact, especially when the alleged touching and rubbing of the victim's

Essentially, defense counsel argues that the end justifies the means, even if the means are improper. The problem is that defense counsel's rule opens the door to either party deliberately violating court rules to obtain dismissal or conviction in a criminal case. Such a result would undermine our whole criminal justice system.

Whether defense counsel's deliberate decision not to raise the known defect in the complaint until after the jury was sworn was made in bad faith or under a belief that he was ethically bound to do so is immaterial to the issue before the court. If, as defense counsel claims, he believed his conduct to be proper, it is incumbent upon the court to correct this fundamental misunderstanding of an attorney's obligations regarding the administration of justice. An attorney is duty-bound to zealously advocate for his or her clients, but that duty does not allow an attorney to selectively disregard the court's rules of procedure in order to obtain a benefit not otherwise obtainable.

As explained above, the midtrial dismissal in this case resulted not from an erroneous district court ruling on the merits, but instead from defense counsel's intentional and improper manipulation of the court proceedings by failing to challenge the defective complaint before trial, as required by court rule. Because the State conceded that it could only prove the facts alleged in the complaint and that, as a matter of law,

those facts did not constitute first-degree "sexual contact with a person under 13 years of age," Minn.Stat. § 609.342, subd. 1, there was no need for the court to make a ruling on the merits nor was there ever a risk that Sahr would be found guilty on the charged offense. Sahr seeks to avoid conviction and imprisonment by deliberately ignoring well-established procedural rules that are designed to ensure fair criminal proceedings.

When a defendant intentionally and improperly manipulates the court proceedings by failing to raise a known defect in the complaint before trial, as required by court rule, the principle underlying the statutory and state and federal constitutional double jeopardy protections is not implicated. Allowing further prosecution in such a case does not needlessly subject a defendant to embarrassment, expense, and ordeal, compel him to live in a continuing state of anxiety and insecurity, or enhance the possibility that, even though innocent, he may be found guilty. *See Scott,* 437 U.S. at 87, 98 S.Ct. 2187. Rather, it is the defendant's intentional rule violation that artificially creates the double jeopardy issue. To not allow further prosecution in such a case will encourage defendants to deliberately ignore well-established procedural rules that are designed to ensure fair criminal proceedings. Extending statutory and state and federal constitutional double jeopardy protections to defendants who

---

vaginal area occurred "under her clothing." The most reasonable reading of the complaint is that Sahr touched her vaginal area with his hand. Third, any arguable ambiguity in the language of the complaint was resolved by the State's pretrial disclosure of the police reports and the CornerHouse interview, which did not allege any bare genital-to-genital contact. Fourth, defense counsel admitted that he knew *at the time he read the complaint* that the complaint was defective because it charged the wrong offense. Fifth, defense counsel's failure to raise the defect in a pre-

trial motion was a deliberate strategic decision—evidenced by his decision not to hire an expert witness or fully prepare for trial because he knew that Sahr was not "facing the right charge." Sixth, defense counsel raised the defect in an in-chambers discussion immediately after the jury was sworn. And seventh, defense counsel's motion—which he characterized as challenging the sufficiency of the State's evidence—was by his own words a challenge that the charge in the complaint was "wrong" or "not valid."

deliberately fail to raise a known defect in the complaint before trial is not necessary to vindicate the principle underlying the double jeopardy protection. Instead, it will encourage defendants to deliberately violate the applicable rule and reward them for doing so. Consequently, I would reverse the district court's denial of the State's motion to file a new complaint.

### III.

Additionally, I disagree with the majority's conclusion that the district court's dismissal constitutes a judgment of acquittal on the merits. Previously, in *State v. Large,* we held that when a jury acquits on three of four charges of criminal sexual conduct, the district court's dismissal of the remaining count amounts to a judgment of acquittal on the merits. 607 N.W.2d 774, 779–80 (Minn.2000). Consequently, we held that the district court's ruling constituted an acquittal on the merits, which implicated double jeopardy principles and barred further prosecution. *Id.* at 780–81.

Here, unlike *Large,* the jury made no determination of guilt or innocence as to any charge. Moreover, the parties did not ask the district court to evaluate the State's evidence and resolve a dispute regarding the evidence. Instead, there was no factual dispute regarding the bare genital-to-genital contact element of the charge for the district court to resolve. Because the circumstances in Sahr's case do not represent " 'a resolution [in the defendant's favor] correct or not, of some or all of the factual elements of the offenses charged,' " *see United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (alteration in original) (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)), I conclude that the district court's dismissal order does not constitute an acquittal on the merits.

The circumstances in Sahr's case are similar to *State v. Holton,* 88 Minn. 171, 92 N.W. 541 (1902). After the jury was sworn, Holton moved to dismiss the indictment, which charged the offense of larceny as a bailee, arguing that the indictment was defective because the name of the bailor was not alleged in the indictment. *Id.* at 172, 92 N.W. at 541. The district court dismissed the indictment and the State did not present any evidence in support of the indictment. *Id.* at 172, 92 N.W. at 541. On appeal, we explained that a defendant's acquittal "on the ground of a variance between the indictment and the proof, or ... upon an objection to its form or substance" does not constitute an acquittal on the merits.[7] *Id.* at 174, 92 N.W. at 542. Because the indictment in *Holton* "was dismissed for a defect in substance, without any acquittal on the merits or otherwise," we concluded that the dismissal did not support a double jeopardy defense. *Id.* at 174, 92 N.W. at 542.

Several other jurisdictions have reached similar conclusions. *See, e.g., People v. Berreth,* 13 P.3d 1214, 1217 n. 2 (Colo. 2000); *State v. Keating,* 223 Mo. 86, 122 S.W. 699, 701 (1909) (explaining that "[i]t is the accepted doctrine that, in order for a former trial and acquittal ... to be invoked on a plea of former jeopardy, it is essential that the former ... trial must have been upon a sufficient indictment or information"); *see also* 1 Charles E. Torcia, *Wharton's Criminal Law* § 62 (15th ed.1993) (explaining that "[a]fter jeopardy has attached, the termination of the trial without a verdict is equivalent to an acquittal and is a bar to a subsequent prose-

---

**7.** We later applied the *Holton* analysis in a case involving a defective complaint. *See State v. Gaulke,* 281 Minn. 327, 328–29, 161 N.W.2d 662, 663 (1968).

cution for the same offense," but such a termination does not bar a subsequent prosecution if it "was justified by manifest necessity, such as ... the dismissal of an indictment which is so defective that it could not have supported a judgment on the verdict" (footnote omitted) (internal quotation marks omitted)).

Like *Holton*, the district court's midtrial dismissal of Sahr's case was based on a defect in the charging document. Admittedly, the defect in Sahr's case involved a variance in the charging document and the alleged proof, rather than an objection to the substance of the charging document, like the failure-to-state-a-public-offense claim asserted in *Holton*. Nevertheless, the principle underlying our analysis in *Holton*—that jeopardy does not attach unless there is a risk of a determination of guilt—applies with equal force to Sahr's case. This is especially true when the State conceded that it could only prove the facts alleged in the probable cause section of the complaint, and as a matter of law those facts did not support the charged offense. Like the dismissal in *Holton*, the district court's midtrial dismissal in Sahr's case does not constitute an acquittal on the merits, and therefore does not support a double jeopardy defense.

Additionally, the United States Supreme Court in *Scott* noted that a district court's characterization of its own action cannot control the classification of that action. 437 U.S. at 96–97, 98 S.Ct. 2187. More importantly, the Supreme Court concluded that "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Id.* at 99, 98 S.Ct. 2187. Here, Sahr was not subject to government oppression. Rather, Sahr voluntarily chose to violate the rules by not disclosing a curable defect in the complaint. Sahr then brought an improper motion to dismiss that was really a motion for a mistrial. Under these circumstances, the district court's action— however characterized by the district court—was in substance a declaration of mistrial, not an acquittal on the merits.

### IV.

In conclusion, I dissent for two reasons. First, Sahr's deliberate failure to raise the known defect in the complaint, as required by well-established rules of criminal procedure, prevents Sahr from asserting the protections of Minn.Stat. § 609.04, and the Double Jeopardy Clauses. Second, even if Sahr's deliberate behavior did not preclude the application of section 609.04, I do not accept the majority's conclusion that a dismissal, based on the State's concession that it lacks any evidence to prove a mistakenly charged offense, constitutes an acquittal on the merits.[8] In either event, the

8. In my view, the concurrence rests on two flawed premises. First, it erroneously concludes that the district court's order constitutes a judgment of acquittal on the merits. If Sahr had been acquitted on the merits of the State's case following a jury trial, as was the defendant in *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), I would agree that Sahr is entitled to double jeopardy protection. But this is not that case. Instead, the district court dismissed the complaint upon the State's concession that the facts alleged in the complaint did not support the charged offense. Simply stated, a dismissal pursuant to a stipulation is vastly different from a determination of innocence by the fact-finder. Our decision in *Holton*, 88 Minn. at 174, 92 N.W. at 542—holding that there is no final judgment of acquittal when a district court dismisses a charging document on the grounds of a variance between the charging document and the proof, or the document was otherwise dismissed upon an objection to its form or substance—is directly on point, and controls the outcome of this case. The concurrence concedes that my reliance on *Holton* is "not without merit," but then suggests rather unpersuasively that the proce-

district court committed reversible error when it reaffirmed its denial of the State's motion to file a new complaint. Accordingly, I would affirm the court of appeals and conclude that double jeopardy does not bar retrial.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Dietzen.

dural background of *Holton* makes it difficult to apply the *Holton* analysis to present day practice.

Second, the concurrence mistakenly concludes that defense counsel did not attempt to manipulate the judicial process. The tactics of defense counsel in this case are transparent and unmistakable. Specifically, counsel waited until the jury was sworn and double jeopardy attached, and then moved for dismissal on the basis of the defective complaint. It is not reasonable or plausible to conclude that defense counsel's timing was accidental, or done on the spur of the moment. Instead, it was a strategic decision, and defendant should bear the consequences of that choice. Essentially, the concurrence ignores the rule violation of defense counsel and implies that the "end" of defense counsel to obtain a dismissal of the complaint justifies the "means" employed even though it involves an intentional rule violation. Rather than clarifying the law, the concurrence undoubtedly encourages future rule violations by defense counsel to obtain a dismissal of a complaint, or other

procedural advantage in complete disregard of the victim's right to a fair and just resolution of the case.

Additionally, the concurrence suggests that Rule 9.02, subd. 1(5) of the Minnesota Rules of Criminal Procedure, and not Rule 10.01, subd. 2, should apply in this case. The argument is without merit. Rule 9.02, subd. 1(5) governs a defendant's obligation to provide discovery and clearly does not apply. The concurrence contends that if Rule 9 does not require disclosure, then a "defendant has no obligation to tell the State it cannot prove the crime charged." This contention, however, fails to recognize that one of our other rules might create such an obligation. In fact, Rule 10.01 creates such an obligation. Rule 10.01, subd. 2, provides that defenses, objections, issues, or requests that can be determined without a trial on the merits must be made before trial by a motion to dismiss. Thus, Rule 10.01 is clearly applicable; and the rule provides that Sahr's failure to bring a motion to dismiss results in a waiver of the claim.