STATE of Minnesota, Respondent,

v.

Javier Barrios GUERRA, Appellant.

No. C3–96–1450.

Court of Appeals of Minnesota.

April 8, 1997.

Hubert H. Humphrey, III, Attorney General, Catherine M. Keane, Assistant Attorney General, St. Paul, for Respondent.

Boyd A. Beccue, Kandiyohi County Attorney, Willmar, for Respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, for Appellant.

Considered and decided by CRIPPEN, P.J., LANSING and PETERSON, JJ.

## OPINION

LANSING, Judge.

A jury found Javier Guerra guilty of possession of stolen firearms but acquitted him of two counts of possession of a short-barrelled shotgun. Guerra appeals his conviction, arguing that the complaint charged only possession of three shotgun and that a mid-trial reinterpretation of the complaint impermissibly amended the charge by allowing the state to prosecute possession of seven handguns from an incident a month earlier. We agree that the recast complaint charged a different offense and also prejudiced Guerra's substantial rights.

## FACTS

Javier Guerra was charged with one count of possession of a stolen firearm, Minn.Stat. §§ 609.53, subd. 1 and 609.52, subd. 3(1) (1996), and two counts of possession of a short-barrelled shotgun, Minn.Stat. § 609.67, subd. 2 (1996). The count alleging possession of stolen property charged that "[o]n or about January 30, 1996, * * * Guerra received, possessed, transferred, bought or concealed stolen property * * * knowing or having reason to know the property stolen is a firearm."

In addition to the counts charged, the complaint included a section stating facts establishing probable cause. That section described three separate instances of theft in the Willmar area. Two of the thefts involved firearms. Seven *shot* guns were taken from a house on December 5, 1995, and seven *hand* guns were taken from a house on December 31, 1995. The probable cause section stated that Benjamin Schandorff, who confessed to the theft of the *hand* guns, said he took them to an Hispanic male named Javier and traded them for nine ounces of marijuana. Schandorff pleaded to a reduced charge in exchange for his testimony against Guerra.

The complaint's probable cause section stated that three of the seven *shot* guns were retrieved from Guerra's apartment when the Willmar police executed a search warrant on January 30, 1996. Guerra shared the apartment with Anne Torres. Guerra and Torres were not at home when police arrived, and Joe Rodriguez, Torres's brother, admitted the police and told the police the *shot* guns belonged to him. Guerra, who returned home during the search, denied knowing the *shot* guns were in the apartment. No *hand* guns were found in the search.

Statements on the record demonstrate that prior to the start of trial, Guerra, his attorney, the trial judge, the charging prosecutor, and the trial prosecutor all believed that the count alleging possession of a stolen firearm related to the possession of the shotguns found in the apartment rather than of the handguns that were not found. At Guerra's first appearance and bail hearing, the court stated to Guerra: "All of these offenses are alleged to have occurred on January 30th of 1996 [the date of the search]." At the same hearing, the prosecuting attorney stated: "Your Honor, this is a very serious charge. Mr. Guerra is accused of having three sawed-off shotguns in his possession, all of which were illegal in length, and for that reason * * * [w]e ask that bail be set * * * ."

In motions prior to trial, Guerra's attorney argued that Schandorff should not be allowed to testify about the theft of the handguns or the guns-for-marijuana exchange because

possession of the handguns was not charged in the complaint. The court queried: "These are guns other than the guns that are described in the complaint * * * that we're having a trial on today?" Guerra's attorney answered: "That's correct." The prosecuting attorney did not respond.

Similarly, the state was proceeding under the assumption that its case against Guerra required proof that he had possession of the shotguns, not the handguns. During arguments on the admissibility of Schandorff's testimony about the handguns, the prosecuting attorney disputed that a *Spreigl* notice was necessary, explaining that the handguns were evidence of the charged offense: "They're evidence of how *this crime* was discovered." (Emphasis added). In her opening statement at trial, the prosecuting attorney did not mention the stolen handguns. Rather, she described for the jury the elements of the charged offense, arguing that the state would show that Guerra "on or about January 30th of 1996 * * * did receive stolen property, the stolen shotgun, that he possessed it and that he knew that."

During a bench conference on the testimony, the state would be allowed to elicit from Schandorff, the following exchange occurred:

COURT: If I understand it correctly, the guns that Schandorff allegedly delivered over to the defendant's apartment are different from the guns that you are charging him with possession of, am I correct?

PROSECUTOR: You are.

The prosecutor's reference to "this crime," her opening statement, and her response to the court's question leave no doubt that her understanding was that the charged offense involved possession of shotguns, not handguns.

The court initially resolved the *Spreigl* issue, i.e., testimony about the handguns, by deciding to allow only enough testimony to establish a foundation for why police were at Guerra's apartment when they discovered the shotguns. But after the state rested its case, the court decided to reconsider the *Spreigl* issue. The court then determined that its rulings on the handguns had been in error. The court concluded that it had mis-

construed count one of the complaint, which charged Guerra with possession of stolen property. The court noted that the reference to "firearms" in count one was broad enough to include the handguns and that "on or about January 30, 1996," could include an offense that allegedly occurred in December 1995. Accordingly, it allowed the state to re-open its case and present testimony and evidence of Guerra's possession of the handguns that had been stolen in December 1995. At the conclusion of the trial, the district court allowed an amendment to the jury instructions to include events that took place on or about December 1995.

During deliberations the jury submitted a question to the court about the handguns: "With regards to stolen property in count one, is that with the handguns, shotguns or both?" In response the court re-read the charge, which referred to "firearms." The jury acquitted Guerra of possession of the short-barrelled shotguns but found him guilty of possession of stolen firearms. The jury's verdict can only be understood as an acquittal on possession of the shotguns found in Guerra's apartment on January 30, 1996, and a conviction for possession of the handguns allegedly delivered to his apartment by Schandorff in December 1995.

## ISSUE

Did the district court constructively amend the complaint in violation of Minn.R.Crim.P. 17.05?

## ANALYSIS

A criminal complaint may be amended at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Minn.R.Crim.P. 17.05. Rule 17.05 has been interpreted to apply once a trial has started. *State v. Alexander,* 290 N.W.2d 745, 748 (Minn.1980).

▪ Prior to trial the presiding court is "relatively free" to allow an amendment charging an additional offense in a criminal complaint. *State v. Bluhm,* 460 N.W.2d 22, 24 (Minn.1990). But after the trial has begun and jeopardy has attached, an amend-

ment is appropriate only if it does not charge an additional or different offense and only if it does not prejudice substantial rights of the defendant. *State v. Smith,* 313 N.W.2d 429, 430 (Minn.1981); *State v. Caswell,* 551 N.W.2d 252, 254 (Minn.App.1996).

■ The record is clear that at the beginning of Guerra's trial, Guerra's attorney, the state, and the court all believed Guerra had been charged with possession of stolen shotguns discovered in his apartment during a search on January 30, 1996. The statements of each of them excludes any belief that Guerra had been charged with possession of stolen handguns. Midtrial, the court reconsidered the complaint and concluded that it was broad enough to charge possession of the handguns. Although the state did not move to amend the complaint, the district court's decision to allow the prosecutor to reopen its case to present additional evidence and to change the date in the jury instruction constituted a constructive amendment.

■ As a result of these rulings, Guerra was required to defend against a separate charge, possession of stolen handguns. The effect was the same as if the court had granted a formal motion to amend the complaint adding a separate count charging possession of stolen handguns. The principle underlying Rule 17.05 is a concern for prejudicial effect, not procedural regularity. *See Caswell,* 551 N.W.2d at 255 ("[A] prosecutor cannot sidestep the requirements of rule 17.05 simply by moving to charge additional violations, rather than by moving to amend the original complaint."). Consistent with the rule's purpose, we hold that when the record demonstrates that a defendant is confronted with an additional charge after trial has begun, such charge constitutes a constructive amendment of the complaint and must comply with the requirements of Minn. R.Crim.P. 17.05.

■ An amendment to the charges against Guerra could be permitted only if it did not charge a different or additional offense or prejudice substantial rights. Minn.R.Crim.P. 17.05. We conclude that the constructive amendment of the complaint against Guerra

both charged a different offense and prejudiced his substantial rights.

■ A "different offense" is charged if an amendment affects an "essential element" of the charged offense. *See Gerdes v. State,* 319 N.W.2d 710, 712 (Minn.1982) (date of alleged offense is not ordinarily essential element; therefore amendment to date does not usually constitute "different offense"); *see also State v. Manley,* 353 N.W.2d 649, 652 (Minn.App.1984) (amendment that places extra burden on defendant, even though alleging same behavior, constitutes "different offense"). The amended offense facing Guerra was the same category of offense as that originally charged—possession of a stolen firearm. But the object of the offense, the date, and the alleged facts underlying each offense were all different. To convict for possession of stolen property, the state must prove (1) that the object of the possession was stolen, (2) that the defendant possessed it, (3) that the defendant knew or had reason to know it was stolen, and (4) the time and place of possession. 10 *Minnesota Practice* CRIMJIG 16.28. The state's proof that Guerra possessed the handguns was different from proof of possession of the shotguns. The knowledge that the guns were stolen and the time and place of possession also differ. Allowing the state to present evidence that in December 1995 Guerra possessed stolen *hand* guns, in addition to the originally-charged offense that in January 1996 he possessed stolen *shot* guns, charged Guerra with an additional, different offense. By charging a different offense, the constructive amendment falls within the prohibition of Rule 17.05.

■ The constructive amendment also violated Rule 17.05's independent proscription against amendments that prejudice a defendant's substantial rights. The rule is intended "to protect against confusing the jury, violating due process notions of timely notice, and adversely affecting the trial tactics of the defense." *State v. Alexander,* 290 N.W.2d 745, 748 (Minn.1980). The jury was obviously confused by the change; they asked the court whether Guerra had been charged with possession of the handguns or the shotguns or both. The state argues that Guerra had

notice that the handguns were in issue because the probable cause portion of the complaint refers to them. But Guerra did not have notice that these claims would be transformed to a separate charge. From the outset Guerra's defense was keyed to the charge of possessing stolen shotguns found in his apartment—shotguns that someone else admitted were his and not Guerra's. Schandorff's statements contained in the complaint that he had traded stolen *hand* guns to Guerra for marijuana require a substantially different defense, and Guerra's request for a continuance after the court's ruling was denied. He was not given an opportunity to develop a defense to the possession of the handguns. The lack of notice and an opportunity to prepare a defense, the confusion of the jury, and the adverse effect on the defendant's trial tactics all demonstrate that the midtrial amendment to the complaint prejudiced Guerra's substantial rights.

### DECISION

The constructive amendment charged a different offense and prejudiced Guerra's substantial rights. Because Rule 17.05 prohibits the amendment, we reverse Guerra's conviction.

**Reversed.**