Brett Randall WALEN, Respondent,

v.

STATE of Minnesota, Appellant.

No. A09–0183.

Supreme Court of Minnesota.

Jan. 14, 2010.

Kyle D. White, St. Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and G. Paul Beaumaster, Rice County Attorney, Faribault, Minnesota, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

Brett Randall Walen appeals the post-conviction court's summary denial of his petition for postconviction relief. Walen asserts that before his trial the State failed to disclose a report prepared by the Minnesota Bureau of Criminal Apprehension. Walen argues that the failure to disclose this report violates *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and he is therefore entitled to a new trial. Walen also argues in the alternative that the same report is newly discovered, exculpatory evidence entitling him to a new trial. Because the report is not material under a *Brady* or newly-discovered-exculpatory-evidence analysis, we hold that the postconviction court did not abuse its discretion in denying Walen's petition for postconviction relief without an evidentiary hearing

On May 23, 1995, a jury found the petitioner, Brett Randall Walen, guilty of first-degree premeditated murder under Minn. Stat. § 609.185(a)(1) (2008) for the killing of Keith Wallace. The Rice County District Court convicted Walen and sentenced him to life in prison. Our opinion in *State v. Walen,* 563 N.W.2d 742 (Minn.1997) details the facts underlying Walen's conviction; therefore we discuss only those facts relevant to this opinion.

At Walen's trial, the State called two expert witnesses who testified about com-

parisons each expert had done between Walen's gun and several bullet fragments taken from the victim's head. The first witness was a firearms examiner with the Minnesota Bureau of Criminal Apprehension (BCA). The BCA examiner testified that he had examined the bullet fragments and Walen's gun and his results were "inconclusive." He explained that by "inconclusive" he meant that he was not able to say with certainty whether Walen's gun had fired the bullet fragments. The second expert witness was a firearms examiner with the federal Bureau of Alcohol, Tobacco, and Firearms (ATF). The ATF examiner testified that he also examined the bullet fragments and Walen's gun, but he testified that the two largest bullet fragments were definitely fired from Walen's gun to the exclusion of all other guns.

After his conviction, Walen commenced a direct appeal and a separate petition for postconviction relief. The two matters were later consolidated. In *State v. Walen*, 563 N.W.2d 742 (Minn.1997), we affirmed both Walen's conviction and the postconviction court's denial of his first petition for postconviction relief. Sometime after we issued our opinion, Walen retained new counsel who directed him to request the record in his case from the BCA, which he did. When the BCA complied with the request, it produced a three-page report prepared by a BCA firearms examiner. Walen claims he had never before seen the BCA report because the State had not produced it before his trial. The BCA report states that the BCA firearms examiner "failed to make an identification" between the bullet fragments found in the victim's head and Walen's gun.

In July 2007, just over ten years after we issued our opinion in *State v. Walen*, Walen filed a second petition for postconviction relief. In his second petition, Walen asserts two claims for a new trial, both based on the BCA report. The first is a claim under *Brady v. Maryland*, based on the theory that the State withheld the BCA report before trial and that the report was exculpatory. The second is a claim that the BCA report represents newly discovered, exculpatory evidence. Addressing only the *Brady* claim, the postconviction court denied the petition without an evidentiary hearing, holding that the BCA report was not material. Walen appealed the postconviction court's decision to our court.

A postconviction court may dismiss a petition for postconviction relief without an evidentiary hearing if the files, petition, and record conclusively show that the petitioner is not entitled to relief. Minn.Stat. § 590.04 subd. 1 (2008). In other words, an evidentiary hearing is not necessary when a petitioner has failed to allege sufficient facts, which, if proved, would entitle him to relief. *Hanley v. State*, 534 N.W.2d 277, 278 (Minn.1995). On review, we determine only whether there is sufficient evidence to support the postconviction court's findings and will not disturb the postconviction court's decision absent an abuse of discretion. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997); *Berry v. State*, 364 N.W.2d 795, 796 (Minn. 1985).

As a threshold matter, the State contends that Walen's claims are barred by *Knaffla*. The *Knaffla* rule bars all claims for relief made in a direct appeal or earlier petition for postconviction relief. *McDonough v. State*, 707 N.W.2d 384, 388 (Minn.2006); *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). The *Knaffla* rule also bars any claims not made but about which a petitioner knew or should have known at the time of an earlier appeal or petition. 309 Minn. at 252, 243 N.W.2d at 741.

The State asserts that the BCA report was disclosed to Walen before his trial,

and therefore he knew or should have known about the BCA-report claims at the time of his earlier appeal and petition. Walen contends that he only became aware of the BCA report after our court denied his consolidated appeal.

To support his petition Walen provided an affidavit from his trial counsel. In the affidavit Walen's trial counsel states that he "believes that [the BCA report] was never disclosed to counsel...." But, in Walen's petition for postconviction relief, Walen states that the report was not disclosed to his trial counsel before trial "or alternatively was received, but never communicated by [trial counsel] to [Walen]." Walen's assertion that the State failed to produce the BCA report, and the affidavit he provides in support are less than convincing. But ultimately we need not decide whether Walen's claims are *Knaffla* barred because they fail on their merits. When addressing the merits of Walen's claims we will assume for the purpose of our analysis that the State failed to produce the BCA report before Walen's trial.

■ Walen argues that the State's failure to disclose the BCA report before trial violates *Brady v. Maryland* and Minn. R. of Crim. P. 9.01. The State contends, assuming for the purpose of argument that it failed to disclose the BCA report, it did not violate either *Brady* or Rule 9.01 because the BCA report was not material under the *Brady* test.

■ Under *Brady*, the suppression by the State, whether intentional or not, of material evidence favorable to the defendant violates the constitutional guarantee of due process. 373 U.S. at 87, 83 S.Ct. 1194. The United States Supreme Court has since defined the three elements of a *Brady* violation: (1) the evidence must be favorable to the defendant because it would have been either exculpatory or impeaching; (2) the evidence must have been suppressed by the prosecution, intentional-

ly or otherwise; and (3) the evidence must be material—in other words, the absence of the evidence must have caused prejudice to the defendant. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn.2005) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

■ We begin with the materiality analysis. Because a *Brady* materiality analysis involves a mixed issue of fact and law, we review a district court's materiality determination de novo. *Pederson*, 692 N.W.2d at 460. We make a materiality determination by considering the effect the undisclosed evidence would have had in the context of the whole trial record. *State v. Poganski*, 257 N.W.2d 578, 580 (Minn. 1977). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Hunt*, 615 N.W.2d 294, 299 (Minn.2000) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)) (internal quotation marks omitted). "A 'reasonable probability' is one that is 'sufficient to undermine confidence in the outcome.'" *Pederson*, 692 N.W.2d at 460 (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375). Accordingly, a new trial is not required simply because a defendant uncovers previously undisclosed evidence that would have been possibly useful to the defendant but unlikely to have changed the verdict. *Poganski*, 257 N.W.2d at 579–80 (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

Assuming that the BCA report was not disclosed before trial, we evaluate the effect the report would have had on the outcome at trial. There are two inquiries relevant to this analysis. The first is whether the terms "inconclusive" and "failed to make an identification" have different meanings. Only if the terms have

different meanings would Walen have possibly been able to better impeach the two firearms examiners at trial. The second inquiry is an examination of the evidence, other than that dealing with firearms identification, which the jury may have relied on in reaching its guilty verdict.

As Walen asserts, the key attribute of the BCA report is that it contains the statement "failed to show identification." At trial, the BCA firearms examiner testified that the comparison of the bullet fragments found in the victim and Walen's gun was "inconclusive." The BCA firearms examiner further testified that, by "inconclusive," he meant that he could not say with certainty that the bullet fragments were pieces of bullets fired from Walen's gun, nor could he say with certainty that they were not. In other words, the results were inconclusive because the BCA firearms examiner failed to make an identification of the exact gun used in the shooting. On cross examination, Walen's trial counsel indicated that he had a similar understanding of the meaning of the term "inconclusive" by using the term "inconclusive" to convey the concept of failing to make an identification. Further, an affidavit from a different firearms expert retained by Walen and submitted to the postconviction court supports the conclusion that the terms are synonymous by stating that the BCA expert who recorded the result, "failed to show an identification" for his finding that the comparison the bullet fragments with test fired bullets was "inconclusive." We conclude that, as those two terms were used here, they were used synonymously by the BCA and that the BCA report did not therefore contain any additional impeachment evidence Walen could have used at trial.

Further, there was substantial evidence aside from the testimony of the two firearms examiners on which the jury could have based its guilty verdict. *See State v.*

*Walen,* 563 N.W.2d 742, 750 (Minn.1997). For example, the State presented evidence of a romantic relationship between Walen and the victim's wife, Michelle Wallace, and that Michelle Wallace initially failed to tell police about this relationship. *Id.* at 750. The State also presented evidence that Michelle Wallace was the sole beneficiary of the victim's $120,000 life insurance policy, that Michelle Wallace and Walen were engaged to be married, and they began looking for a home to purchase together shortly after the victim's murder. *Id.* Additionally, the State presented evidence that Walen was unable to say for certain where he was at the time of the murder. Walen purchased a gun that used ammunition similar to that used in the murder, and Walen sold that gun hours after the murder. In sum, because the terms "inconclusive" and "failed to make an identification" were used synonymously by the BCA, and because the State presented substantial evidence of Walen's guilt in addition to the testimony of the two firearms examiners, we conclude that nondisclosure of the BCA report would not represent a *Brady* violation because the BCA report was not material.

■ Walen argues in the alternative that the BCA report is newly discovered, exculpatory evidence and therefore he is entitled to a new trial. One of the elements we use to determine whether a new trial should be granted based on newly discovered evidence is materiality. *State v. Hurd,* 763 N.W.2d 17, 34 (Minn.2009); *Rainer,* 566 N.W.2d at 695; *see also* Minn. R.Crim. P. 26.04 subd. 1(1). The materiality standard under a *Brady* analysis is more favorable to a defendant than the fourth prong of the newly-discovered-evidence test. *Gorman v. State,* 619 N.W.2d 802, 805–06 (Minn.App.2000), *rev. denied* (Feb. 21, 2001); *compare Hunt,* 615 N.W.2d at 299 (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375) (requiring that a defendant show a reasonable probability that

the outcome at trial would have been different had the undisclosed evidence been produced), *with Hurd*, 763 N.W.2d at 34 (requiring that the defendant demonstrate that the evidence would probably have produced a more favorable outcome at trial). Because we have concluded that the BCA report is not material under *Brady*, we also conclude that it is not material under the newly-discovered-evidence analysis.

Even if the facts alleged by Walen are true, we conclude he is not entitled to a new trial because the BCA report is not material under either a *Brady* or a newly-discovered-evidence analysis. Therefore, we hold that the postconviction court did not abuse its discretion in denying Walen's petition for postconviction relief without an evidentiary hearing.

Affirmed.