*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2210**

State of Minnesota,
Respondent,

vs.

Nicholas John Rossiter,
Appellant.

**Filed November 3, 2014
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-13-3454

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County
Attorney, Dominick D. Mathews, Assistant County Attorney, Jean Burdorf, Assistant
County Attorney, Charissa Perzel, (certified student attorney), Minneapolis, Minnesota
(for respondent)

Nicole A. Kettwick, Brandt Criminal Defense, PLLC, Anoka, Minnesota (for appellant)


        Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross,

Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Nicholas Rossiter challenges his conviction of first-degree driving while impaired, arguing that the district court erred when it denied his motion to suppress the results of his urine test and that it abused its discretion when it allowed the state to amend the complaint. Rossiter also claims the state committed a *Brady* violation by failing to produce a chain-of-custody log for the urine test. Because the district court neither erred in denying Rossiter's suppression motion nor abused its discretion in permitting the amendment, and because the chain-of-custody log was not *Brady* material, we affirm.

## FACTS

On August 30, 2012, Hennepin County Deputy Sheriff Richard Rehman was on patrol on Fish Lake in Maple Grove. At about 8:06 p.m., Deputy Rehman had stopped a boat when he observed another boat pass his own at a high rate of speed. The boat caught his attention because a city ordinance does not permit a wake on Fish Lake after sunset, which had occurred about ten minutes earlier. Five minutes later, he again observed the boat travelling at a high rate of speed, which he believed was a violation of the no-wake-zone ordinance. Deputy Rehman activated his lights and stopped the boat.

Deputy Rehman identified the boat's driver and sole occupant as the appellant, Nicholas Rossiter. Deputy Rehman asked Rossiter if he had been drinking, and Rossiter replied that he had consumed three beers. Deputy Rehman read Rossiter the implied-consent advisory, and Rossiter agreed to provide a urine sample for testing. Deputy Rehman collected the urine sample while they were on the deputy's boat. Deputy

Rehman arrested Rossiter for being under the influence and boating while intoxicated. The urine sample remained in Deputy Rehman's possession until he placed it in the evidence refrigerator at either 2:00 or 4:00 a.m. the next morning.

Two tests of the sample by the Minnesota Bureau of Criminal Apprehension showed an alcohol concentration of more than 0.09. Rossiter was charged with first-degree driving while impaired. *See* Minn. Stat. § 169A.20, subdivision 1(5) (2012) (alcohol concentration over .08).

Before trial, Rossiter moved to suppress the results of his urine test based on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In his memorandum, Rossiter argued that although he may have consented to the urine test, in light of *McNeely*, no exigent circumstances justified taking the test and that the implied-consent law was unconstitutionally coercive. The district court denied this motion the morning of trial, stating that *McNeely* did not affect the implied-consent procedure. Rossiter also moved to exclude two witnesses who were to testify to the chain of custody of the sample; the district court denied this motion as well.

In its initial instructions to the jury, the district court defined the elements of the charge as: (1) operation of a motor vehicle, including motor boats in operation; (2) at the time of operation, the defendant's alcohol concentration was 0.08 or more; and (3) the act took place on or about August 30, 2012, in the city of Maple Grove, Hennepin County, Minnesota. Rossiter's counsel objected to these instructions, but the district court delayed argument on the instructions until after opening statements.

In her opening statement, Rossiter's counsel gave a brief account of the stop, including that Rossiter had been drinking and was driving a boat. The balance of the statement focused on the alcohol testing and Rossiter's physical ailments.

After opening statements, the jury was excused and Rossiter's counsel argued her objection to the initial instructions. Counsel asserted that the jury instructions were incorrect as he had been charged under Minnesota Statutes section 169A, subdivision 1, which does not include motorboats in operation. The state moved to amend the complaint to charge subdivision 1a, which covers driving a motorboat under the influence of alcohol. Rossiter's counsel objected to this amendment under Minnesota Rule of Criminal Procedure 17.05, claiming that the amendment would add a new element and prejudice him. The state countered that the language of the two subdivisions was identical. The district court noted that there would be no probable cause unless it was assumed this crime was charged under subdivision 1a, and that it was the exact case the defense was prepared to try; therefore no prejudice resulted from the change.

At trial, Deputy Rehman testified about the stop, the implied-consent advisory he read to Rossiter, and his collection and storage of the urine sample. Hennepin County Deputy Sheriff Jason Majeski testified that he took Rossiter's urine sample from patrol headquarters in Brooklyn Park to the Minnesota Bureau of Criminal Apprehension. He also testified about the procedures used in transporting samples and the chain-of-custody log. A bureau employee from the evidence-intake area testified that she received the sample from Deputy Majeski. After the testimony of these witnesses, Rossiter moved for a judgment of acquittal based on discovery violations, including a failure to provide the

4

chain-of-custody log. The state said it would request the logs, and the motion was denied. The bureau scientist who tested the sample testified that no evidence suggested that anyone had tampered with it.

The jury convicted Rossiter of operating a motorboat with an alcohol concentration of 0.08 or more. The district court sentenced Rossiter to 36 months' commitment to the commissioner of corrections, stayed for five years and five years' probation. This appeal followed.

## D E C I S I O N

### I. Motion to Suppress

Rossiter first argues that the district court erred in denying his motion to suppress. He contends that the state did not meet its burden of proving an exception to the warrant requirement because the district court did not take any testimony or evidence to find facts and that, without a record, the urine test results must be suppressed.

When reviewing a pretrial order on a suppression motion, this court independently reviews the facts and determines as a matter of law whether the district court erred in its ruling on the motion. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). The district court's factual findings are reviewed under a clearly erroneous standard, and the legal determinations are reviewed de novo. *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007).

Here, the district court did not receive evidence or testimony regarding the stop. Rossiter correctly asserts that the burden is on the state to establish an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). We are troubled

5

by the district court's decision not to conduct a hearing on this issue. But we conclude that the district court did not err because Rossiter's argument on this point was solely a legal argument.

In his memorandum supporting his motion, Rossiter did not claim that he did not consent to the search. Instead, he argued that the implied-consent advisory coerced his consent, basing his argument on *McNeely*. The district court correctly concluded that *McNeely* does not affect implied-consent procedures in Minnesota. *See State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013). Because Rossiter's argument was about the legality of the search and not the facts surrounding it and because the district court correctly concluded that his legal argument lacked merit, the district court did not err in denying the motion.

## II.     Amendment of the Complaint

Rossiter next contends that the district court abused its discretion in permitting the complaint to be amended. He claims that the complaint was amended to add a different offense and that he suffered prejudice because he had already admitted an element of the offense in opening statements. The state counters that the amendment did not add a new or different offense but merely specified the original charge. It further contends that Rossiter was not prejudiced because he had adequate time to prepare a defense, and the change had no effect on his trial tactics. The state's position has merit.

Minnesota Rule of Criminal Procedure 17.05 states that a court may allow a complaint to be amended at any time before a verdict "if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced."

6

Permitting an amendment to a complaint under rule 17.05 is within the sound discretion of the trial judge. *State v. Bakdash*, 830 N.W.2d 906, 916 (Minn. App. 2013), *review denied* (Minn. Aug. 6, 2013).

Rossiter was originally charged with a violation of Minnesota Statutes section 169A.20, subdivision 1(5). This subdivision states:

> It is a crime for any person to drive, operate, or be in physical control of any motor vehicle, as defined in section 169A.03, subdivision 15, except for motorboats in operation and off-road recreational vehicles, within this state or on any boundary water of this state when:
> ***
> (5) the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more[.]

Minn. Stat. § 169A.20, subd. 1. The subdivision on driving a motorboat while impaired contains virtually identical language:

> It is a crime for any person to operate or be in physical control of a motorboat in operation on any waters or boundary waters of this state when:
> ***
> (5) the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motorboat is 0.08 or more[.]

*Id.*, subd. 1a. With the exception of the different "motor vehicle" "motorboat" language, the subdivisions are nearly identical.

## A.      *New or Different Offense*

"A 'different offense' is charged if an amendment affects an 'essential element' of the charged offense." *State v. Guerra*, 562 N.W.2d 10, 13 (Minn. App. 1997). Here, the

7

elements do vary: subdivision 1 refers to operating motor vehicles except for motorboats, and subdivision 1a refers to operating motorboats. Minn. Stat. § 169A.20, subds. 1, 1a.

But this difference is immaterial. Under the "Driving While Impaired" statutes, a motorboat is considered a motor vehicle. Minn. Stat. § 169A.03, subd. 15 (2012). The language between the subdivisions and their applicable clauses varies only in that motorboats are specifically included in subdivision 1a rather than subdivision 1. Minn. Stat. § 169A.20, subds. 1, 1a. A minor variation in the language of subdivisions does not mean that a new or different offense has been charged. *See State v. Manley*, 353 N.W.2d 649, 652 (Minn. App. 1984) ("Comparing the elements of the two statutory provisions, it is obvious they vary. This is true of any two statutory provisions, however. The variations between these two subdivisions alone are not significant.").

Amendments "must be of form, not of substance, which means the amendment may not charge a greater offense." *Bakdash*, 830 N.W.2d at 917 (quotation omitted). The amendment here is one of form: no new offense was charged, and the substance of the two offenses is nearly identical. The penalties for violation of either are the same; one charge cannot be said to be "greater" than the other. *See* Minn. Stat. § 169A.24, subd. 2 (2012) (describing penalty for violation of Minn. Stat. § 169A.20). Therefore, the amended complaint did not charge a new or different offense.

### B. *Prejudice*

The principle behind Minnesota Rule of Criminal Procedure 17.05 is "a concern for prejudicial effect, not procedural regularity." *Guerra*, 562 N.W.2d at 13. The rule is

designed to protect against confusing the jury and adversely affecting the defense's trial tactics. *Id.* Neither was present here.

We find it highly unlikely that the jury was confused by the amendment: when reading the elements of the offense, the district court instructed them that the first element was "the defendant operated a motor vehicle. The term 'motor vehicle' . . . includes motor boats in operation . . . ." This language accurately described a violation of subdivision 1a of the statute, the amended charge.

We are also unpersuaded that the amendment had any effect on Rossiter's trial tactics. Rossiter was aware of the charges and was prepared to try a case of operating a motorboat with an alcohol concentration above 0.08. Although Rossiter conceded in his opening statement that he was driving a motor boat, the focus of the statement and his defense was on the validity of the testing procedures, not the type of motor vehicle he was driving when stopped. Rossiter could not explain how his opening statement would have changed had the crime been charged under the proper subdivision. Because he was the sole person in the boat when it was stopped, it is difficult to imagine a successful defense that contested his operation of a boat. As the district court told Rossiter when it allowed the amendment, this case was the exact case and the exact fact situation Rossiter was prepared to try. Therefore, Rossiter was not prejudiced by the amendment.

Rossiter relies on *State v. Sahr*, 812 N.W.2d 83 (Minn. 2012), in support of his position. But *Sahr* is inapposite here. The issues in *Sahr* involved double jeopardy, and the supreme court considered whether, after a district court denied a motion to amend, its subsequent dismissal of the complaint represented an acquittal on the merits. *Id.* at 90.

9

The supreme court specifically stated that it could not consider whether denying the motion to amend was proper. *Id.* at 92 n.8. In addition, the district court in *Sahr* denied the motion to amend because of prejudice to the defendant, including the effect an amendment would have had on his trial tactics. *Id.* at 87. But Rossiter cannot make that showing here.

Because the amendment did not charge a new or different offense and because Rossiter suffered no prejudice as a result, the district court properly exercised its discretion in permitting the state to amend the complaint.

### III.   *Brady* Violation

Rossiter finally argues that the state's failure to provide a chain-of-custody log for the urine sample violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). He claims that this evidence was material because the crux of the state's case involved the accuracy of the urine sample and that he was prejudiced because he could not fully explore how the sample was stored and transported.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S. Ct. at 1196-97. A *Brady* violation has three components: (1) the evidence must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice to the accused must have resulted. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005). All components must be met to be a *Brady* violation. *Id.* The remedy for

10

a *Brady* violation is a new trial. *State v. Hunt*, 615 N.W.2d 294, 299 (Minn. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972)).

To be prejudicial, the evidence must be material. *See Pederson*, 692 N.W.2d at 460 (analyzing the materiality under the third *Brady* prong). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3384 (1985)). "A 'reasonable probability' is one that is 'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383). Materiality is a mixed question of fact and law and is reviewed de novo. *Id.*

We do not agree with Rossiter that the chain-of-custody log rises to the level of material evidence under *Brady*. In *Walen v. State*, 777 N.W.2d 213 (Minn. 2010), the supreme court examined the *Brady* materiality of a Minnesota Bureau of Criminal Apprehension report not produced for the defendant. At trial, an examiner for the bureau testified that the results of a comparison between bullets fired from the defendant's gun and bullet fragments taken from the victim were "inconclusive." *Id.* at 215. The report the defendant received after trial showed that the firearm examiner "failed to make an identification" between the bullet fragments from the gun and the victim. *Id.* The court reasoned that "failed to show an identification" and "inconclusive" were synonymous, and therefore the report did not contain any additional impeachment evidence the defendant could have used at trial. *Id.* at 217. Consequently, the report was not material and the nondisclosure did not represent a *Brady* violation. *Id.*

11

That same reasoning applies here. The chain-of-custody log may have had some impeachment value. But, as in *Walen*, it did not have any *additional* impeachment value that Rossiter could have used at trial.

Deputy Rehman's testimony showed that the sample was not immediately refrigerated and that it sat out for a number of hours before he placed it in the refrigerator. Deputy Majeski's testimony established that he removed the sample and delivered it to the bureau. The chain-of-custody log most likely would have established the same. Like the testimony and report in *Walen*, the log and the deputies' testimony likely would have adduced the same information. Rossiter does not explain how the log would have provided any additional impeachment evidence that was not available through the deputies' testimony. Because the log was not material evidence, its nondisclosure was not a *Brady* violation. *See id.*

Rossiter further argues that he was prejudiced because the log's absence created a foundation problem for the admission of the urine test. He does not specifically argue that the urine test results were improperly authenticated, but that the log—rather than testimony—could have been used to admit the sample.

A chain of custody is to ensure that evidence has not been contaminated or altered, and these points can be established through the testimony of witnesses. *State v. Bellikka*, 490 N.W.2d 660, 663 (Minn. App. 1992), *review denied* (Minn. Nov. 25, 1992). Here, witnesses testified about the transport of the sample. And the state's forensic scientist did not see evidence of tampering. A proper foundation was laid, and the report from the expert, which included the results of the testing, was admitted. Although the chain of

custody could have been used, Rossiter does not show how he was prejudiced by the use of testimony to admit results of the urine test.

Because the chain-of-custody log was neither material nor favorable to Rossiter, no *Brady* violation occurred, and no new trial is warranted.

**Affirmed.**