*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1907**

Crystal Marie Vodinelich, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 10, 2015
Affirmed
Peterson, Judge**

Dakota County District Court
File No. 19HA-CR-11-1388

Cathryn Middlebrook, Chief Appellate Public Defender, Katie M. Conners, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Chip Granger, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Peterson, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from the denial of her petition for postconviction relief, appellant argues that she is entitled to withdraw her guilty plea to fifth-degree controlled-substance

crime, or, at the very least, she is entitled to an evidentiary hearing to resolve the material facts and issues presented in the petition. We affirm.

## FACTS

In a pat-down search conducted during a traffic stop, a police officer discovered a pipe that contained charred residue in appellant Crystal Marie Vodinelich's jacket pocket. A preliminary test of the pipe by the Dakota County Drug Task Force (DCDTF) detected methamphetamine. A later test of the pipe by the St. Paul Police Department Crime Lab (SPPDCL) also detected methamphetamine.

Appellant was charged with fifth-degree controlled-substance crime and two counts of fourth-degree driving while impaired (DWI). Pursuant to a plea agreement, she pleaded guilty to the controlled-substance charge and to one DWI count.

At the plea hearing, appellant confirmed that she understood the trial rights that she was giving up and that she was not claiming that she was innocent of the charges to which she was pleading guilty. When establishing the factual basis for the controlled-substance offense, appellant affirmed that the police officer "found in [her] possession or control, a pipe . . . that was determined to contain a trace amount of methamphetamine." The district court accepted appellant's plea, and she was convicted and sentenced.

Appellant later learned about deficient controlled-substance testing procedures used at the SPPDCL and petitioned for postconviction relief. In her petition, she requested that she be permitted to withdraw her guilty plea, or, at the very least, that there be an evidentiary hearing to resolve the material fact issues presented in the petition. The

district court determined that appellant was entitled to no relief and denied her petition without a hearing. This appeal follows.

**D E C I S I O N**

**I.**

Under the postconviction-relief statute,

> a person convicted of a crime, who claims that . . . the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state . . . may commence a proceeding to secure relief by filing a petition in the district court in the county in which the conviction was had to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence or make other disposition as may be appropriate.

Minn. Stat. § 590.01, subd. 1(1) (2014). The petitioner has the burden to prove the facts alleged in the postconviction petition by a fair preponderance of the evidence. Minn. Stat. § 590.04, subd. 3 (2014). "To meet that burden, a petitioner's allegations must be supported by more than mere argumentative assertions that lack factual support." *Powers v. State*, 695 N.W.2d 371, 374 (Minn. 2005).

In an appeal from a postconviction court's decision to grant or deny relief, we review issues of law de novo and issues of fact for sufficiency of the evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007); *see also Butala v. State*, 664 N.W.2d 333, 338 (Minn. 2003) (noting that appellate courts "extend a broad review of both questions of law and fact" when reviewing postconviction proceedings).

> We review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion. A postconviction court abuses its discretion when

its decision is based on an erroneous view of the law or is against logic and the facts in the record.

*Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation and citation omitted).

In her petition for postconviction relief, appellant asserted that (a) her guilty plea was invalid; (b) newly discovered evidence of deficiencies at the SPPDCL rendered her guilty plea insufficient; (c) the state's suppression of the evidence of the deficiencies violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); and (d) she received ineffective assistance of counsel when her counsel failed to discover the deficiencies at the SPPDCL.

**A.    Invalid Guilty Plea**

A defendant does not have an absolute right to withdraw a guilty plea. *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). A defendant seeking to withdraw a guilty plea after sentencing must show "that withdrawal is necessary to correct a 'manifest injustice.'" *Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quoting Minn. R. Crim. P. 15.05, subd. 1), *review denied* (Minn. Aug. 11, 2009). Under this standard, plea withdrawal must be permitted if the guilty plea is not valid, which depends on whether the plea was accurate, voluntary, and intelligent. *Raleigh*, 778 N.W.2d at 94. The defendant has the burden of establishing the grounds for permitting a plea withdrawal, and the validity of a plea is a question of law, which this court reviews de novo. *Id.* This court must affirm a postconviction court's decision unless the postconviction court abused its discretion. *Bruestle v. State*, 719 N.W.2d 698, 704 (Minn. 2006).

Appellant argues that her guilty plea was not accurate, voluntary, or intelligent.

4

### i. Accurate

To be accurate, a plea must be supported by a proper factual basis. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). A proper factual basis is established when there are sufficient facts in the record to support a conclusion that the defendant's conduct falls within the charge to which she is pleading guilty. *Munger v. State*, 749 N.W.2d 335, 337-38 (Minn. 2008) (stating that the requirement that a plea be accurate "protects the defendant from pleading guilty to a more serious offense than he could properly be convicted of at trial"). "The factual basis requirement is usually satisfied when the court asks the defendant to express in his own words what happened." *State v. Lyle*, 409 N.W.2d 549, 552 (Minn. App. 1987). "The court should not accept the plea unless the record supports the conclusion that the defendant actually committed an offense at least as serious as the crime to which he is pleading guilty." *State v. Trott*, 338 N.W.2d 248, 251-52 (Minn. 1983).

Appellant argues that her plea was not supported by a proper factual basis because the state did not prove the identity of the substance in her possession. Appellant contends that relying solely on a defendant's belief that something is a controlled substance is insufficient to prove the identity of a substance. But the factual basis for appellant's plea that was established during the plea hearing was not based solely on appellant's belief that the substance in the pipe was methamphetamine. During her testimony at the plea hearing, appellant did not simply state that she believed the charred substance in her pipe was methamphetamine; she agreed that a police officer "found in [her] possession or control, a pipe . . . *that was determined to contain a trace amount of methamphetamine.*"

(Emphasis added.) The determination that the substance was methamphetamine was not based on appellant's belief. This evidence was sufficient to support a conclusion that appellant's conduct fell within the controlled-substance charge to which she pleaded guilty.

### ii. Voluntary

The requirement that a plea be voluntary "ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96. Appellant argues that, in light of what we now know about testing deficiencies at the SPPDCL, information "that a credible scientific lab had tested the substance [in her pipe], and it tested positive as a controlled substance" was an improper pressure that induced her to plead guilty. But no evidence suggests that the state made any representations to appellant about the scientific credibility of the SPPDCL, and providing test results to appellant was neither improper pressure nor coercive.

### iii. Intelligent

The requirement that a plea be intelligent "ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Id.* Appellant argues that her plea was not intelligent because she was not aware of the SPPDCL's deficiencies when she pleaded and did not know how, or understand her right, to challenge the test result. But during the plea hearing, appellant affirmed that she (1) reviewed the plea petition with her attorney, (2) understood and was giving up her right to a trial where she "would be presumed innocent and the burden would be upon [the state] to prove [her] guilt beyond a reasonable doubt," and (3) understood and was

6

giving up her rights to (a) "cross examine [the state's] witnesses and ask them questions" and (b) call witnesses to testify on her behalf.

These statements demonstrate that appellant and her attorney had discussed her right to challenge the state's case against her and that appellant understood that, by pleading guilty, she gave up her right to do so. Appellant has not shown that when she gave up her right to challenge the state's case, she did not understand that she could use the discovery procedures available under the rules of criminal procedure to challenge the SPPDCL test result.

Appellant did not show that withdrawal of her guilty plea is necessary to correct a manifest injustice, and the district court did not abuse its discretion by denying her request to withdraw the plea.

## B. Newly Discovered Evidence

Appellant argues that because the evidence about the widespread problems at the SPPDCL meets the test for newly discovered evidence, the district court abused its discretion when it denied her motion to withdraw her plea. A defendant is entitled to postconviction relief based on newly discovered evidence if the defendant proves

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

7

*Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997); *see also Roberts v. State*, 856 N.W.2d 287, 290-92 (Minn. App. 2014) (considering a postconviction claim of newly discovered evidence following a guilty plea), *review denied* (Minn. Jan. 28, 2015).

The district court determined that the evidence about deficiencies at the SPPDCL was not known to appellant or her counsel when appellant pleaded guilty and that the evidence could not have been discovered with due diligence before her guilty plea. But the district court denied postconviction relief based on newly discovered evidence because it also determined that the evidence about the SPPDCL "would be impeaching evidence and go to the weight of the evidence, not its admissibility" and that appellant had not shown that the evidence "would probably produce an acquittal or a more favorable result."

The district court did not abuse its discretion by denying appellant postconviction relief based on newly discovered evidence about deficiencies at the SPPDCL. There were two test results that showed that the substance on the pipe found in appellant's pocket was methamphetamine; one result from the preliminary DCDTF test and a separate result from the SPPDCL test. Appellant has not shown that the DCDTF test result was insufficient to prove that the substance was methamphetamine. Consequently, even if the evidence about SPPDCL deficiencies was sufficient to make the SPPDCL test results inadmissible, there is still sufficient evidence to prove that the substance was methamphetamine, and it is not probable that the evidence about SPPDCL deficiencies would produce an acquittal or a more favorable result.

Also, we disagree with the district court's determination that the evidence about deficiencies at the SPPDCL could not have been discovered with due diligence before appellant's guilty plea. Under Minn. R. Crim. P. 9.01, subd. 1(4)(a), the prosecutor must, at the defense's request, disclose the results of scientific tests. Thus, appellant could have requested the SPPDCL's test results, and, if she had any question about the validity of the results, the prosecutor was required under Minn. R. Crim. P. 9.01, subd. 1(4)(b), to allow her to subject the tested substance to her own reasonable tests. If appellant had conducted her own tests and the test results suggested that the SPPDCL test results were incorrect, inadequate, or invalid, she could have brought a motion under Minn. R. Crim. P. 9.01, subd. 2(1), asking the district court to require the prosecutor to assist her in seeking access to specified matters relating to the case, which could have included laboratory procedures at the SPPDCL. Appellant demanded disclosure of all test results,[1] but she has not shown that she used any of these available forms of discovery to determine the validity of the SPPDCL test results.

Appellant argues that the problems at the SPPDCL could not have been discovered through due diligence before her plea hearing because no one had reason to suspect any problems until after the hearing. But, unless appellant already knew when the pipe was discovered that the substance on the pipe was methamphetamine, she had reason to suspect problems when the SPPDCL's test result showed that the substance was methamphetamine. At that point, due diligence would include using the discovery

---

[1] In her May 26, 2011 demand for disclosure, appellant demanded all results and reports of physical or mental examinations, scientific tests, experiments and comparisons made in connection with this case.

procedures available under the rules of criminal procedure to determine the validity of the results. Evidence of the deficiencies could have been discovered using these procedures. *See Roberts*, 856 N.W.2d at 291 (stating that appellant's assertion that "the deficiencies in the [SPPDCL's] procedures could not have been discovered with due diligence because no one had reason to suspect problems at the crime lab" was "belied" by the fact that "the defendant in [a] 2012 Dakota County case discovered the deficiencies").

C.    ***Brady* Violation**

"[T]he suppression by the State, whether intentional or not, of material evidence favorable to the defendant violates the constitutional guarantee of due process." *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010) (citing *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97); *see also State v. Hunt*, 615 N.W.2d 294, 299 (Minn. 2000) (explaining that the state has a duty to disclose even when there has been no request for the evidence by the defendant and that the remedy for a *Brady* violation is a new trial). A *Brady* violation exists if "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice to the accused resulted." *State v. Brown*, 815 N.W.2d 609, 622 (Minn. 2012). The state's suppression of evidence results in prejudice to the accused if the evidence is "material" in that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Walen*, 777 N.W.2d at 216 (quotation omitted) (explaining that "[a] reasonable probability is one that is sufficient to undermine confidence in the outcome" (quotations omitted)).

The district court determined that appellant did not demonstrate that a *Brady* violation occurred because "nothing in the record suggests that the evidence [of deficiencies at the SPPDCL] was suppressed in any manner by the prosecutor. Indeed, everything in the record suggests that the evidence was unknown to the prosecutor at the time of [appellant's] plea."

There is sufficient evidence to support the district court's findings that the evidence was unknown to the prosecutor and the prosecutor did not suppress the evidence. Appellant entered her guilty plea on February 22, 2012, and she was sentenced on April 18, 2012. As appellant asserted in the memorandum of law in support of her petition for postconviction relief, "[a] few months after the court sentenced [appellant] in this case, significant new evidence of massive problems at the [SPPDCL] came to light." Appellant also asserted in the memorandum, "[t]he [SPPDCL] came under scrutiny in 2012 and was the subject of a prong two Frye-Mack hearing in Dakota County that began on July 16, 2012. Following three days of testimony in July 2012, the Dakota County Attorney's Office abandoned the [SPPDCL] testing results." When appellant entered her guilty plea, the prosecutor could not have known about evidence that did not come to light until after appellant was sentenced.

Appellant argues that, because prosecutors and police officers could have learned about the SPPDCL's deficiencies before her plea hearing, suppressing evidence about the deficiencies was a *Brady* violation. But, although it appears that the practices in the SPPDCL that were found to be deficient existed before appellant pleaded guilty, appellant cites no evidence that the prosecutors or police knew before July 2012 that the

11

practices were deficient. Appellant cites no authority that extends the duty to disclose evidence under *Brady* to include a duty to conduct investigations that may produce evidence that is favorable to the accused.

### D.    Ineffective Assistance of Counsel

An appellate court reviews the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that his counsel's representation 'fell below an objective standard of reasonableness'; and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (quotations omitted) (noting that "counsel's performance is presumed to be reasonable").

Appellant argues that her attorney provided ineffective assistance by failing to demand and review the SPPDCL file for her case. Appellant has not shown that a reasonably competent defense attorney exercising customary skills and diligence in a controlled-substance case would have demanded the SPPDCL file before the discovery of the SPPDCL's deficiencies. *See id.* at 267 (stating that the reasonableness of counsel's

12

conduct is judged in view of the facts at the time of the conduct). Appellant has not cited any evidence that would have given her attorney a reason to believe that the substance on her pipe was not methamphetamine and, therefore, to question the validity of the SPPDCL test results.

Even if appellant's attorney provided representation that fell below an objective standard of reasonableness by failing to demand the SPPDCL file, it is not reasonably probable that the result of the proceeding would have been different absent the attorney's error. Two tests detected the presence of methamphetamine on the pipe. Even if deficiencies at the SPPDCL were serious enough to make the SPPDCL test results inadmissible, there was still evidence that the substance was methamphetamine. As long as there was evidence that the substance was methamphetamine, it is not reasonably probable that appellant's attorney would not have pursued a plea agreement. Appellant was not entitled to postconviction relief because of ineffective assistance of counsel.

## II.

Appellant argues that she should be granted an evidentiary hearing to allow her to present evidence in support of her postconviction claims. A district court must hold a hearing on a postconviction petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). "An evidentiary hearing is not required unless there are material facts in dispute that must be resolved to determine the postconviction claim on its merits." *Powers*, 695 N.W.2d at 374. A denial of an evidentiary hearing is reviewed for an abuse of discretion. *Riley*, 819 N.W.2d at 167. Based on the preceding analysis of

the issues that appellant raised in her petition, we conclude that there are no material facts in dispute to be resolved during an evidentiary hearing and the record conclusively shows that appellant is not entitled to postconviction relief. Nothing in the record suggests that either appellant or her counsel had any reason to believe that the charred substance was not methamphetamine or that the prosecutor had any reason to believe before appellant pleaded guilty and was sentenced that there were deficiencies at the SPPDCL. The district court did not abuse its discretion by denying appellant's request for an evidentiary hearing.

**Affirmed.**